ELIZABETH L. CROOKE, ESQ. [SBN 90305]
STEVEN J. LIPSCOMB, ESQ. [SBN 203266]
**ENGSTROM, LIPSCOMB & LACK**
11601 Wilshire Blvd., 14th Floor
Los Angeles, California 90025
Tel.: (310) 552-3800
Fax: (310) 552-9434
EMAIL: bcrooke@elllaw.com

STEVEN C. MARKS *(pending pro hac vice)*
KRISTINA M. INFANTE *(pending pro hac vice)*
PABLO ROJAS *(pending pro hac vice)*
**PODHURST ORSECK, P.A.**
SUNTRUST INTERNATIONAL CENTER
ONE S.E. 3RD AVENUE, SUITE 2300
MIAMI, FLORIDA 33131
Tel.: (305) 358-2800
Fax: (305) 358-2382

Attorneys for Plaintiff

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

MARIA MAGDALENA OLARTE,
individually and as personal representative of
the Estate of LANCE MACLEAN, deceased,

        Plaintiff,

    vs.

THEODORE M. NEALE, a California resident
and citizen, SERGEY BRIN, a California
citizen, BAYSHORE GLOBAL
MANAGEMENT LLC, a California limited
liability company, GOOGLE LLC, a California
limited liability company, SEAFLY LLC, a
California limited liability company,
SOUTHERN CROSS AVIATION INC., and
DOES 1 to 50, inclusive,

        Defendants.

Case No.: 24-CV-2021

**PLAINTIFF'S OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS
OF DEFENDANTS BAYSHORE
GLOBAL MANAGEMENT LLC,
SEAFLY LLC, SERGEY BRIN AND
THEODORE M. NEAL [DKT. 12]**

**Date:** **August 22, 2024**
**Time:** **2:00 pm.**
**Place:** **Courtroom 10 – 19th Floor**

## TABLE OF CONTENTS

Page(s)

I.    INTRODUCTION ........................................................................6

II.   STATEMENT OF RELEVANT FACTS ...................................7

III.  LEGAL STANDARD ...............................................................8

IV.   ARGUMENT ...........................................................................8

   1. THIS COURT LACKS SUBJECT MATTER
      JURISDICTION ...................................................................8
   2. PLAINTIFF'S CLAIMS ARE NOT PREEMPTED BY
      DOHSA ...............................................................................9

   A. Lance Maclean died in California territorial waters ..........................9
   B. DOHSA does not apply in California's
      territorial waters ...............................................................12
   C. Even if DOHSA governs Plaintiff's wrongful death claims, it
      does not apply to Plaintiff's claims arising after Lance
      Maclean's death ..............................................................17
   D. Even if DOHSA governs all of Plaintiff's claims, it would
      merely provide the remedy. DOHSA is not a basis for dismissal .....17

   3. PRODUCTS LIABILITY .................................................18

   4. TORTIOUS INTERFERENCE WITH REMAINS ..................19

   5. CONVERSION ...............................................................21

   6. THE NMSA DOES NOT MAKE THE REQUESTED
      CONDUCT IN PLAINTIFF'S REQUEST FOR A
      MANDATORY INJUNCTION UNLAWFUL .......................21

   7. PLAINTIFF INTENDS TO VOLUNTARILY DISMISS
      HER CLAIMS AGAINST DEFENDANT NEAL IN HIS
      INDIVIDUAL CAPACITY AND DEFENDANT
      GOOGLE LLC…………………………………………………22

V.    CONCLUSION ...................................................................22

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*In re Air Crash Off Long Island, New York, on July 17, 1996*,
  209 F.3d 200 (2d Cir. 2000) ...................................................................... 10, 15, 16

*In re Bailey*,
  197 F.3d 997 (9th Cir. 1999) ...................................................................... 21

*Arpin v. Santa Clara Valley Transp. Agency*,
  *261 F.3d 912, 925 (9th Cir.2001)* ............................................................. 8

*Blome v. Aerospatiale Helicopter Corp.*,
  924 F. Supp. 805 (S.D. Tex. 1996), *aff'd sub nom. Blome v. Aerospatiale*
  *Helicop*, 114 F.3d 1184 (5th Cir. 1997) .................................................... 12

*Catsouras v. Dep't of California Highway Patrol*,
  181 Cal. App. 4th 856 (2010) ................................................................... 19

*Christensen v. Superior Court*,
  54 Cal.3d 868 (1991) ............................................................................... 19

*Cohen v. ConAgra Brands, Inc.*,
  16 F.4th 1283 (9th Cir. 2021) .................................................................... 9

*Cornelio v. Premier Pacific Seafoods, Inc.*,
  279 F.Supp.2d 1228 (W.D.Wash.2003) ..................................................... 6

*De La Cruz v. Tormey*,
  582 F.2d 45 (9th Cir.1978) ........................................................................ 8

*Enesco Corp. v. Price/Costco Inc.*,
  146 F.3d 1083 (9th Cir.1998) .................................................................... 8

*Gillespie v. U.S. Steel Corp.*,
  379 U.S. 148 (1964) .............................................................................. 10, 13

*Gilligan v. Jamco Develop. Corp.*,
  108 F.3d 246 (9th Cir.1997) ...................................................................... 8

*Gund v. Pilatus Aircraft, Ltd.*,
  2010 WL 887376 (N.D. CA 2010) ............................................................. 18

*Helman v. Alcoa Global Fasteners, Inc.*,
  637 F.3d 986 (9th Cir. 2011) .................................................................. 15, 16

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

*Huber v. United States*,
    838 F.2d 398 (9th Cir. 1988)..................................................................................14

*Khoja v. Orexigen Therapeutics*,
    899 F.3d 988 (9th Cir. 2018)..................................................................................14

*Kipp v. Amy Slate's Amoray Dive Center, Inc.*,
    251 So.3d 941 (Fla. 3d DCA 2018).......................................................................12

*LaHaye v. Galvin Flying Serv., Inc.*,
    144 F. App'x 631 (9th Cir. 2005)...........................................................................14

*Moragne v. States Marine Lines, Inc.*,
    398 U.S. 375 (1970) ........................................................................................10, 13

*Norfolk Shipbuilding & Drydock Corp. v. Garris*,
    532 U.S. 811 (2001) ...............................................................................................12

*Pierpont v. Barnes*,
    94 F.3d 813 (2d Cir. 1996) .......................................................................................8

*Riyanto v. Boeing Company*,
    638 F.Supp.3d 902 (N.D. Ill. 2022).........................................................................8

*Robles v. Ambient Pressure Diving Ltd.*,
    2010 WL 2889555 (C.D. Cal. 2010) ....................................................................6, 8

*Ross v. Forest Lawn Memorial Park*,
    153 Cal.App.3d 988 (1984) ...................................................................................20

*Rowland v. Christian*,
    69 Cal.2d 108 (1968) .............................................................................................20

*Ruhrgas AG v. Marathon Oil Co.*,
    526 U.S. 574 (1999) .................................................................................................8

*Saari v. Jongordon Corp.*
    5 Cal.App.4th 97 (1992) .......................................................................................19

*Sexton v. Carnival Corp.*,
    504 F. Supp. 3d 1359 (S.D. Fla. 2020)..................................................................20

*Sinai Temple v. Kaplan*,
    54 Cal.App.3d 1103 (1976) ...................................................................................20

*Skiriotes v. State of Florida*,
    313 U.S. 599 (1941) ...............................................................................................11

467632

4

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

*U.S. v. Ohio Barge Lines*,
   607 F.2d 604 (3d Cir. 1979) ..................................................................... 21

*Yamaha Motor Corp. v. Calhoun*,
   516 U.S. 199 (1996) ................................................................................ 12

**Statutes**

16 U.S.C. § 1431(b)(2) & (b)(7) ................................................................ 11

28 U.S.C. § 1333 ....................................................................................... 10

28 U.S.C. §1333(1) ...................................................................................... 6

28 U.S.C. § 1441(b) ..................................................................................... 6

28 U.S.C. § 1447(c) ...................................................................................... 6

46 U.S.C. § 30301 ........................................................................................ 9

46 U.S.C. § 30302 ........................................................................................ 9

46 U.S.C. § 30308 ................................................................................. 10, 12

46 U.S.C.§ 30307 ......................................................................................... 9

Cal. H & S Code §7100 .............................................................................. 20

National Marine Sanctuaries Act, 16 U.S.C. §§ 1431, et. seq. .................. 11

Wreck Act, 33 U.S.C. §409 ........................................................................ 21

**Other Authorities**

CACI 1220 ................................................................................................. 20

*Exclusive Economic Zone of the United States of America, Proclamation 5030*, 48
   Fed. Reg. 10605 (Mar. 10, 1983) ........................................................... 11

Fed. R. Evid. 201(b)(2) .............................................................................. 14

Restatement Second of Torts section 868 ................................................... 20

Robin Kundis Craig, *It's Not Just an Offshore Wind Farm: Combining Multiple
   Uses and Multiple Values on the Outer Continental Shelf*, 39 Pub. Land &
   Resources L. Rev. 59, 66-67 (2018) ....................................................... 11

Rule 12(b)(6) ................................................................................................ 8

467632

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

1

## I.     INTRODUCTION

2

Defendants Bayshore Global Management, LLC, Seafly LLC, Sergey Brin and Theodore

3

Neal move to dismiss Plaintiff's First Amended Complaint ("FAC"), which was removed from the

4

Superior Court for the County of Santa Clara.[1]  Defendants' argument is both simple and simply

5

wrong.

6

Defendants contend that all the causes of action alleged are merely variations of one claim:

7

Death on the High Seas ("DOHSA"); all the causes of action alleged are thus subsumed into that

8

single claim.  Mot. Dkt. 12 at p. 12:19-23.  But if that is true then this Court lacks subject matter

9

jurisdiction: DOHSA does not afford a basis for subject matter jurisdiction and Defendants'

10

removal of this case was improvident. *See Robles v. Ambient Pressure Diving Ltd.*, 2010 WL

11

2889555, at *1 (C.D. Cal. 2010), ("DOHSA claims are not removable under § 1441(b)"); *Cornelio*

12

*v. Premier Pacific Seafoods, Inc.*, 279 F.Supp.2d 1228, 1230 (W.D.Wash.2003) ("admiralty . . .

13

claims do not arise under the 'laws of the United States' for purposes of removal based upon federal

14

question jurisdiction and therefore are not removable pursuant to 28 U.S.C. § 1441(b).[2] Remand to

15

state court pursuant to 28 U.S.C. § 1447(c) is therefore appropriate.").

16

Further, on the facts alleged in the FAC, DOHSA does not apply to Plaintiff's claims for

17

these and other reasons:  1) the FAC does not allege a death occurring on the "High Seas" as that

18

term is used in DOHSA, upon which Defendants rely; 2) the flight on which the fatal accident

19

occurred was commercial and therefore subject to an exception in DOHSA; 3) the FAC alleges

20

claims arising *after* the death of Lance Maclean; and 4) even if DOHSA applied, it is not grounds

21

for dismissal but the source of the remedy.  This final point appears to be conceded; under any

22

construction of facts and law, Plaintiff has a viable claim for her husband's death.  Dkt. 12 at 2:22-

23

23.

24

For these reasons, the motion to dismiss should be denied in its entirety. Further, the

25

matter should be remanded to state court, where it belongs.

26

27

28

---

[1] Plaintiff has timely filed a Motion to Remand addressing this issue.
[2] Plaintiff hereby invokes the saving-to-suitors clause of 28 U.S.C. §1333(1).

## II.     STATEMENT OF RELEVANT FACTS

The facts alleged in the FAC control on this Motion.  The FAC alleges that Google, LLC and its co-founder, Sergey Brin, operate a number of commercial aircraft including a Boeing 767-200 jetliner and Viking Twin Otter ("Viking") a commuter-type twin turbine engine airplane that is typically configured to seat 19 people.[3]  FAC ¶¶ 1, 8, 126, etc.  Brin ordered that the Viking be flown to Fiji, but in order for that to happen, the airplane had to be outfitted with an extended range fuel system. That work was arranged and accomplished by Bayshore Global Management, LLC, Seafly, LLC and Theodore Neal.

Defendants contracted with Plaintiff's decedent, Lance Maclean, a highly experienced commercial pilot and a second commercial pilot to fly the Viking to Fiji.   On May 20, 2023, the Viking departed from the Santa Rosa airport and headed west over the Pacific.  Several hours into the flight, the pilots declared an emergency, reversed course and headed toward land: Half Moon Bay.  They almost made it, but went down offshore, in the Greater Farallones National Marine Sanctuary.  FAC ¶36.  Both pilots perished.  Nothing on the face of the complaint supports defendants' contention that the crash was "approximately 33 miles off the coast" and Defendants' effort to introduce extrinsic evidence on the motion to dismiss should be rejected.

The crash was not the end of the story.  Despite assuring Lance Maclean's widow that her husband's remains would be recovered, the Defendants walked away from the disaster.  As outlined in the FAC, Defendants made several promises about the handling of the remains that were then repeatedly broken; all those broken promises amount to collateral representations and misrepresentations that are themselves actionable under California law, when the claim is made by Mr. Maclean's widow.  She alleges a series of state law causes of action that arise independent of and after the death claim—*i.e.*, separate claims based on conduct temporally distant from and unrelated to the accident-causing conduct—and those claims also all withstand this motion.

///

///

///

---

[3] The airworthiness certificate for the Viking was for aerial surveying and patrolling.

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

III.     **LEGAL STANDARD**

The instant Motion reaches only the legal sufficiency of a complaint. *De La Cruz v. Tormey*, 582 F.2d 45, 48 (9th Cir.1978).  In other words, a defect, if any, must appear on the face of the complaint. "[T]he court cannot consider material outside the complaint (e.g., facts presented in briefs, affidavits or discovery materials)." WILLIAM W. SCHWARZER, A. WALLACE TASHIMA & JAMES M. WAGSTAFFE, FEDERAL CIVIL PROCEDURE BEFORE TRIAL § 9:211 (2004) (citing *Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 925 (9th Cir.2001)). The factual allegations in the FAC must be accepted as true and construed in the light most favorable to the plaintiff.  *See Enesco Corp. v. Price/Costco Inc*., 146 F.3d 1083, 1085 (9th Cir.1998). "The [Rule 12(b)(6)] motion to dismiss for failure to state a claim is viewed with disfavor and is rarely granted." *Gilligan v. Jamco Develop. Corp*., 108 F.3d 246, 249 (9th Cir.1997).

IV.     **ARGUMENT**

1.   **THIS COURT LACKS SUBJECT MATTER JURISDICTION.**

As a threshold matter, although this Court has the ability to deny the Motion to Dismiss, it bears noting that this Court lacks removal jurisdiction over this action, a topic Plaintiff addressed in her pending Motion to Remand. As a court of limited jurisdiction, this court must first determine the threshold question of its subject matter jurisdiction.  *See Ruhrgas AG v. Marathon Oil Co.,* 526 U.S. 574, 577 (1999).  Because Defendants contend that every cause of action asserted is subsumed or preempted by DOHSA, this is, according to that logic, a pure DOHSA case, and it is well settled that DOHSA does not confer federal removal jurisdiction.  *Pierpont v. Barnes*, 94 F.3d 813, 816 (2d Cir. 1996); *Robles v. Ambient Pressure Diving LTD*, *supra*, 2010 WL 2889555 at *1, *Riyanto v. Boeing Company*, 638 F.Supp.3d 902, 907 (N.D. Ill. 2022) (over Plaintiff's objection, admiralty claims are not removable).

This Court need not go further examining the admiralty and state law principles invoked by this FAC because it was improvidently removed and should be remanded to state court.

///

///

///

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

1

## 2.  PLAINTIFF'S CLAIMS ARE NOT PREEMPTED BY DOHSA.

"Preemption is an affirmative defense, so the defendant bears the burden of pleading and supporting its preemption argument." *Cohen v. ConAgra Brands, Inc.*, 16 F.4th 1283, 1289 (9th Cir. 2021). Defendants have not met their burden. In their Motion to Dismiss, Defendants argue that all of Plaintiff's state-law claims are preempted by DOHSA, 46 U.S.C. § 30301. DOHSA provides for a cause of action "[w]hen the death of an individual is caused by wrongful act, neglect, or default occurring *on the high seas* beyond 3 nautical miles from the shore of the United States." 46 U.S.C. § 30302 (emphasis added). Lance Maclean did not die on the high seas; he died in waters within the territorial jurisdiction of California. And Defendants cannot show otherwise, certainly not at this stage of the litigation. Nor can they provide any basis—beyond conclusory statements—for their argument that Plaintiff's tortious interference with a dead body and conversion claims, which post-date the horrific crash, fall within DOHSA's ambit. And finally, even if they could show that DOHSA governs the available remedies in this action, that showing would not constitute grounds for dismissal of Plaintiff's complaint.  In other words, even if the Court is persuaded by Defendants' DOHSA arguments, that does not entitle Defendants to the relief they seek.  Accordingly, Defendants' arguments premised on DOHSA fail to support dismissal.

### A.  Lance Maclean died in California's territorial waters.

Lance Maclean did not die on the "high seas" beyond California's territorial waters. Rather, he died in waters off the California coast where both the State of California and the United States government concurrently exercise their sovereignty—the Greater Farallones National Marine Sanctuary ("GFNMS").  On the face of the FAC, this accident happened in the GFNMS, and within California's territorial waters.

Defendants argue for the application of DOHSA, which has a very limited application to certain accidents resulting in death "[w]hen the death of an individual is caused by wrongful act, neglect, or default occurring on the high seas beyond three nautical miles from shore" or, in the case of commercial aviation accidents, it applies to certain accidents producing death "beyond 12 nautical miles from the shore of the United States." 46 U.S.C.§ § 30307.  It does not apply within the territorial limits of a State and does not affect the law of a state regulating the right to recover for

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

1    death.   46 U.S.C. § 30308.   Admiralty jurisdiction applies, subject to the "saving to suitors"

2    provisions of 28 U.S.C. § 1333.   As explained above, courts have been clear that DOHSA, if it

3    applies at all, does not confer federal removal jurisdiction.   And it doesn't apply where the accident

4    occurs within the territorial boundaries set by State and federal law.

5    DOHSA does not govern within the territorial jurisdiction of any State, including territorial

6    waters.   DOHSA's purpose was to create a remedy where none previously existed, and not to

7    displace preexisting state remedies. "Congress intended to ensure the continued availability of a

8    remedy, historically provided by the States, for deaths in territorial waters." *Moragne v. States*

9    *Marine Lines, Inc.*, 398 U.S. 375, 397 (1970). And "[t]he record of the debate in the House of

10   Representatives preceding passage of [DOHSA] reflect[ed] deep concern that the power of the States

11   to create actions for wrongful death in no way be affected by enactment of the federal law." *Gillespie*

12   *v. U.S. Steel Corp.*, 379 U.S. 148, 165 (1964) (citing 59 Cong. Rec. 4482-4486). A state's territorial

13   waters were to be excluded from DOHSA's scope because state common-law remedies already

14   existed for deaths in those waters. Indeed, "the state remedies that were left undisturbed not only

15   were familiar but also may actually have been more generous than the remedy provided by the new

16   Act." *Id.* at 398. And "the humane and liberal character of proceedings in admiralty" advises in favor

17   of more generous recovery. *The Sea Gull*, 21 F. Cas. 909, 910 (C.C. Md. 1865) (No. 12,578) (Chase,

18   C.J.); *see also Moragne*, 398 U.S. at 387 (quoting Chief Justice Chase). In sum, the statute and

19   legislative history demonstrate that "in DOHSA, Congress prioritized the preservation of preexisting

20   remedies over securing uniformity in admiralty law." *Crash Off Long Island*, 209 F.3d at 209.

21   Pursuant to the 1982 United Nations Convention on the Law of the Seas ("UNCLOS"), "[t]he

22   high seas constitute *all parts of the sea that are not included in the exclusive economic zone*, in the

23   territorial sea, or in the internal waters of a State."   UNCLOS III art. 86 (emphasis added). UNCLOS

24   III recognized exclusive economic zones ("EEZs") extending two hundred nautical miles from the

25   baseline. Within the EEZ, coastal states have sovereign rights to the water column and sea floor as

26   well as to the natural resources found there. The EEZ is an area in which a sovereign state has

27   exclusive rights regarding the exploration and use of marine resources and stretches from the outer

28   limit of the territorial sea out two hundred nautical miles from the coast of the state in question.

Robin Kundis Craig, *It's Not Just an Offshore Wind Farm: Combining Multiple Uses and Multiple Values on the Outer Continental Shelf*, 39 Pub. Land & Resources L. Rev. 59, 66-67 (2018). In 1983, President Reagan proclaimed a 200-nautical-mile EEZ for the United States for all purposes, amounting to an assertion of U.S. control over 3.4 million square nautical miles of ocean. *Id.* at 64-66; *see Exclusive Economic Zone of the United States of America, Proclamation 5030*, 48 Fed. Reg. 10605 (Mar. 10, 1983).

With the expansion of jurisdiction over coastal waters, pursuant to the National Marine Sanctuaries Act ("NMSA"), 16 U.S.C. §§ 1431, et. seq., the State of California and the United States engaged in a partnership to co-manage and co-regulate the GFNMS, where Lance Maclean's body now lies. NMSA was intended to: (1) "provide authority for comprehensive coordinated conservation and management of these marine areas"; and (2) "develop and implement coordinated plans for the protection and management of these areas with appropriate Federal agencies, State and local governments . . . and other public and private interests concerned with the continuing health and resilience of these marine areas." 16 U.S.C. § 1431(b)(2) & (b)(7). NMSA defines "marine environment" as "those areas of coastal and ocean waters . . . and submerged lands over which the United States exercises jurisdiction, including the exclusive economic zone, consistent with international law." *Id.*

Pursuant to the extensive co-management plan of the GFNMS between the State of California and the United States, both the State of California and the United States exercise jurisdiction over the GFNMS.  Accordingly, the GFNMS falls within the EEZ and the territorial seas of the State of California (and the United States), which has permission to regulate waters in which it has a legitimate interest.  *See Skiriotes v. State of Florida*, 313 U.S. 599 (1941) (upholding the right of the State of Florida to regulate by statute conduct in Gulf of Mexico waters where State had a legitimate interest in protecting its environment and state statute did not conflict with federal law). Thus, California has an interest in adjudicating the wrongful deaths of two pilots killed as a result of torts and legal violations committed by California residents and corporations while in California, and where the wreckage and bodies lie within the GFNMS, threatening the GFNMS's delicate ecosystem and marine life, including endangered species. California's wrongful death and survival

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

statutes provide a remedy for deaths occurring within the GFNMS, where California exercises jurisdiction.  By DOHSA's plain terms, California state law provides a remedy that cannot be displaced.  Plaintiff's claims are not preempted.

### B.  DOHSA does not apply in California's territorial waters.

DOHSA "was not intended to preclude the availability for wrongful death… in situations not covered by the Act," *Norfolk Shipbuilding & Drydock Corp. v. Garris*, 532 U.S. 811, 818, (2001). Further, "state remedies remain applicable in wrongful death and survival actions arising from accidents to non-seamen in territorial [non-high-seas] waters," *Yamaha Motor Corp. v. Calhoun*, 516 U.S. 199 (1996).  The Yamaha Court found that the non-application provision of DOHSA proscribed "DOHSA from displacing state law in territorial waters." *Id.* at 216.  The legislative history of DOHSA (as considered by the United States Supreme Court in *Gillespie*, *supra* confirms that had "high seas" (the no-man's law of the sea) been defined in 1920 as it is today, Congress would have reserved to the States (as it did then) its full rights to determine recovery for death in waters over which the State exercises its sovereignty.  Lance Maclean died within sight of California. He was almost to shore when, because of Defendants' negligence, the fuel ran dry.  Based on the facts alleged in the FAC there is no factual basis upon which to base a conclusion that this accident happened beyond California's waters.  And DOHSA expressly excludes applicability for accidents occurring in the territorial waters of any State.  *See* § 30308(b) ("This chapter does not apply to the Great Lakes or waters within the territorial limits of a State.").

In *Kipp v. Amy Slate's Amoray Dive Center, Inc*., 251 So.3d 941 (Fla. 3d DCA 2018) the Florida state appellate court considered whether DOHSA limited claims arising from an offshore death.  The Court considered the limitations of 46 U.S.C. § 30308, and Florida's expanded territorial boundaries and concluded that DOHSA did not apply to deaths within the State's expanded territorial boundaries, beyond the three nautical mile limit.  As the court explained, that three nautical mile limit "governs except where its application would affect a State's wrongful death remedy or cause DOHSA to apply within the territory of a state." *Id.* at 945.

Also instructive is *Blome v. Aerospatiale Helicopter Corp.*, 924 F. Supp. 805, 807 (S.D. Tex. 1996), *aff'd sub nom. Blome v. Aerospatiale Helicop*, 114 F.3d 1184 (5th Cir. 1997).  The case arose

from the death of an inspector for the U.S. Coast Guard who was killed when a helicopter transporting him to a vessel to be inspected crashed into the Gulf of Mexico offshore Galveston, Texas.  His widow sought recovery against several defendants in state court under the Texas Wrongful Death Act.  After removal, defendants moved for partial summary judgment, contending that the action was governed by DOHSA.  The court held that (1) DOHSA applies to death occurring offshore of Texas only if the death occurred more than three marine leagues from the Texas coast, which is "[t]he territorial boundary of Texas" under Texas law, and (2) evidence that the helicopter crash occurred seven miles offshore, within the three league boundary of Texas territorial waters, raised a question of fact as to whether claims were governed by DOHSA or state law, precluding summary judgment.

In reaching these conclusions, the U.S. District Court for the Southern District of Texas expressly considered the question: "does DOHSA apply to all deaths occurring more than one league offshore regardless of state territorial boundaries, or does DOHSA apply to deaths occurring more than one league offshore only if the death does not occur in the territorial waters of any state[?]" *Id.* at 812.  The answer, the Court concluded, is that DOHSA only applies if the death does not occur in the territorial waters of a state.  In reaching this conclusion, the court conducted a lengthy analysis of statutory text and legislative history.  It explained that its interpretation is "consistent with the purpose and policy of DOHSA," which was enacted to specifically provide a remedy for wrongful deaths occurring on the "high seas" *outside* the territorial waters of a particular state:

> As all admiralty practitioners are aware, it was not until 1970 that a wrongful death cause of action was recognized as a part of the general maritime law. *See The Harrisburg,* 119 U.S. 199 (1886) (no wrongful death cause of action exists under the general maritime law), *overruled, Moragne v. States Marine Lines,* 398 U.S. 375 (1970) (recognizing cause of action). Before *Moragne,* admiralty courts ameliorated the harshness of the rule of *The Harrisburg* by applying state wrongful death and survival statutes to cases arising within state territorial waters. *See, e.g., Western Fuel Co. v. Garcia,* 257 U.S. 233 (1921) (state wrongful death statute); *Just v. Chambers,* 312 U.S. 383 (1941) (state survival statute).

13

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

In 1920, Congress enacted DOHSA to fill the gap left by *The Harrisburg* by creating a wrongful death cause of action for deaths occurring on the high seas—an area generally beyond the reach of state law. The legislative history of DOHSA indicates that Congress intended DOHSA to work in conjunction with state laws by "leaving unimpaired the rights under State statutes as to deaths on waters within the territorial jurisdiction of the States." S.Rep. No. 216, 66th Cong., 1st Sess., 3, 4 (1919); H.R.Rep. No. 674, 66th Cong.2d Sess., 3, 4 (1920), *quoted in Moragne,* 398 U.S. at 397. This Court's interpretation of DOHSA thus is consistent with the purpose and policy of DOHSA, and insures complete coverage of deaths occurring on navigable waters—***state law supplies the remedy in state territorial waters, and DOHSA supplies the remedy outside state territorial waters***. To construe DOHSA as applying to deaths occurring more than one marine league offshore without regard to state territorial boundaries would impair the rights under state statutes, and would be completely inconsistent with the long-acknowledged purpose of DOHSA.

*Id.* at 812–13 (some internal citations omitted) (emphasis added). DOHSA is a gap-filling statute meant to provide a remedy for wrongful death for accidents that occur outside the reach of state law. This accident occurred within the reach of California law. Accordingly, DOHSA does not apply where, as here, a death occurs in waters within California's territorial jurisdiction.

At the very least, the question of whether DOHSA applies, as in *Blome*, is not susceptible to adjudication on a motion to dismiss or at summary judgment. On the face of the FAC, this accident happened in the GFNMS, and within California's territorial waters. Defendants' effort to overcome the FAC allegations by way of a request for judicial notice of the NTSB preliminary report fails; the report doesn't satisfy the requirement of Fed. R. Evid. 201(b)(2) that the matter "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." The report, in only preliminary form, first speculates where the Viking went down and then supplies no basis for that, nor does it relate that location to the territorial boundaries. The content is disputed and should not be considered. *See Khoja v. Orexigen Therapeutics*, 899 F.3d 988 (9th Cir. 2018) (the Court "cannot take judicial notice of disputed facts contained in such public records" and "[j]ust because the document itself is susceptible to judicial notice does not mean that every assertion of fact within that document is judicially noticeable for its truth." *Id. See too LaHaye v. Galvin Flying Serv., Inc*., 144 F. App'x 631, 634 (9th Cir. 2005) (request for judicial notice of preliminary NTSB report denied because, among other things, it "is subject to reasonable dispute"); *Huber v. United States*, 838 F.2d 398, 403 (9th Cir. 1988) (reports of Coast Guard and NTSB inadmissible.

1    Accordingly, as the *Blome* case acknowledged, evidence that the crash occurred within California's

2    territorial waters raises, at the very least, a question of fact precluding adjudication at the motion to

3    dismiss or summary judgment stage.

4         This conclusion is unaffected by the Ninth Circuit's opinion in *Helman v. Alcoa Global*

5    *Fasteners, Inc.*, 637 F.3d 986, 988 (9th Cir. 2011).   In *Helman*, the court considered whether

6    DOHSA governed the remedies available where a crash occurred in *federal*—not state—territorial

7    waters beyond three nautical miles.   It held that DOHSA applied, creating a circuit split with the

8    Second Circuit, which has held that DOHSA does not apply in federal territorial waters.   *See In re*

9    *Air Crash Off Long Island, New York, on July 17, 1996*, 209 F.3d 200, 201 (2d Cir. 2000) ("TWA

10   Flight 800") ("DOHSA does not apply to the United States territorial waters where the crash in this

11   case occurred.").

12        In reaching its holding, the *Helman* court relied in large part on then-Judge Sotomayor's

13   dissent in *TWA Flight 800*, which reasoned that DOHSA should not incorporate "an international

14   legal concept of sovereignty" to decide the application of DOHSA to U.S. territorial waters.

15   Importantly, however, then-Judge Sotomayor drew a distinction between *federal* and *state* territorial

16   waters.   She wrote that "DOHSA was drafted to cover only waters a marine league from the shore

17   of a state, or waters within regions *where the federal government has exclusive jurisdiction*."   *Id.* at

18   222 (Sotomayor, J., dissenting) (internal citations omitted) (emphasis in original).   DOHSA

19   explicitly left undisturbed territories within a state's jurisdiction—areas where state remedies had

20   previously existed.   *See* § 30308(b) ("This chapter does not apply to the Great Lakes or waters within

21   the territorial limits of a State.").    The legislature was clear that it did not want DOHSA to touch

22   territories within a state's jurisdiction "in order to preserve state remedies."   *Id.*   The TWA 800

23   dissent reasoned that the concept of the *states'* territorial seas—not U.S. territorial seas—was of sole

24   import to the DOHSA drafters:

25

26          Thus, the fact that DOHSA at the time of its drafting excluded U.S. territorial waters
            was irrelevant to Congress in establishing the three nautical mile boundary line. The

27          only "concept" that mattered to DOHSA's drafters was the concept of the states'
            territorial seas.

28

---

467632

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

*TWA Flight 800*, 209 F.3d at 222.   Judge Sotomayor posited "that if the U.S. territorial sea had exceeded three nautical miles in 1920, Congress would still have set DOHSA's boundary line beyond a marine league . . . because the decision in The Harrisburg left no remedy for death in any area *outside state territorial waters*."   *Id.* (emphasis added).   Accordingly, Judge Sotomayor's dissent is entirely consistent with cases like *Blome* (which was affirmed by the Fifth Circuit), holding that (i) DOHSA does not apply in the territorial waters of any particular state, (ii) a state's territorial waters can extend beyond the boundary of three nautical miles, and (iii) the question of whether a crash occurred in state territorial waters can be a question of fact precluding summary judgment.   Judge Sotomayor's dissent makes clear that if the TWA 800 crash had occurred in the territorial waters of a state, the court would have unanimously held that DOHSA does not apply.

In *Helman*, the Ninth Circuit adopted Judge Sotomayor's reasoning in her dissent in *TWA 800*.   There, the plaintiffs argued, as plaintiffs had successfully argued in *TWA 800*, that "'high seas' is a political term that excludes all United States territorial waters."   *Helman*, 637 F.3d at 990.   The court rejected this argument, creating a circuit split with the Second Circuit, holding, as Judge Sotomayor had posited, that the term "high seas" was not meant "to incorporate into the statute the independent and fluid political concept of U.S. territorial waters. Instead, a more natural reading indicates that the term 'high seas' is defined for purposes of the statute by the explicitly stated geographic boundary of 'beyond three nautical miles.'"   *Id.*   Again, this holding focused on the application of DOHSA in federal territorial waters.   But the court's analysis did not touch upon DOHSA's application in *state* territorial waters, nor does it confront DOHSA's explicit language preserving remedies that would be available in state territorial waters.   *See* § 30308(b) ("This chapter does not apply to the Great Lakes or waters within the territorial limits of a State.").   Because the plain language of DOHSA prohibits its application in state territorial waters, it is inapplicable here.

The crash that resulted in the death of Lance Maclean occurred in territorial waters within the jurisdiction of California.   Accordingly, DOHSA does not apply.

///

///

///

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

**C.  Even if DOHSA governs Plaintiff's wrongful death claims, it does not apply to Plaintiff's claims arising *after* Lance Maclean's death.**

Even if—contrary to the text, purpose, and legislative history of DOHSA—this Court were to find that DOHSA governs Plaintiff's wrongful death claims, DOHSA would not preempt Plaintiff's claims post-dating his death, namely tortious interference with a dead body and conversion. On its face, DOHSA applies when a claim seeks recovery for a "death of an individual" that was "caused" by "wrongful act, neglect, or default occurring on the high seas." Certainly, Defendants' interference with Plaintiff's right to lay her husband's body to reset, while horrible, in no way *caused* her husband's death.  Plaintiff's claims for tortious interference with a dead body and for conversion are based on post-accident conduct and representations made to Plaintiff.  These are separate causes of action based on separate conduct that occurred *after* the death of Lance Maclean.   "Tortious interference with a *dead* body is, by definition, not a wrongful-death claim." *Sexton v. Carnival Corp.*, 504 F. Supp. 3d 1359, 1363 (S.D. Fla. 2020) (finding tortious interference claim was not preempted by DOHSA).

Despite Defendants' conclusory argument that Plaintiff's claims, "are inextricably tied to the fact that the location of the accident and the location where Plaintiff's decedent's remains came to rest are the high seas," Defs.' Mot. to Dismiss at 12, DOHSA does not preclude a claim of tortious interference with a dead body because the Plaintiff is suing for the injury caused *after* the death. *Sexton*, 504 F. Supp. 3d at 1361. This distinction applies with equal force to Plaintiff's conversion claim. "DOHSA does not apply to these claims that arose after – and are wholly unrelated to the cause of – [Maclean's] death." *Id.* at 1364.  Thus, neither claim is preempted.  DOHSA applies only to wrongful death actions for deaths on the high seas.  Defendants' efforts to stretch DOHSA beyond its statutory reach should be rejected.

**D.  Even if DOHSA governs all of Plaintiff's claims, it would merely provide the remedy.  DOHSA is not a basis for dismissal**.

Should this Court find that all of Plaintiff's claims are preempted by DOHSA, it still should not grant Defendants' Motion to Dismiss Plaintiff's case.  DOHSA merely prevents the recovery of non-pecuniary damages. Thus, this Court, if it were to find DOHSA applies, would need to dismiss

any claims for non-pecuniary damages specifically, rather than dismissing all claims wholesale.  *See, e.g.*, *Dooley v. Korean Air Lines Co., Ltd.*, 524 U.S. 116, 120 (1998) (noting the defendant "moved to dismiss all of petitioners' claims for nonpecuniary damages").

Indeed, DOHSA itself supplies a remedy.  *See Gund v. Pilatus Aircraft, Ltd.,* 2010 WL 887376 at *3 (N.D. CA 2010).  In *Gund*, the court concluded that, although DOHSA applied in the case, "[t]his conclusion does not require . . . the dismissal of both complaints." *Id.*  "In passing DOHSA, Congress created a *remedy* in admiralty for wrongful deaths more than three miles from shore." *Id.* (internal quotation marks and citation omitted) (emphasis in original).  Accordingly, plaintiffs' claims for negligence, strict liability, and breach of warranty "are not inconsistent with DOHSA, which explicitly applies when 'the death of an individual is caused by wrongful act, neglect, or default.'" *Id.* (quoting 46 U.S.C. § 30302).

In the case of an accident arising during the course of "commercial aviation" (a term never defined in DOHSA) remedies include both pecuniary and nonpecuniary damages.  In *Gund*, the Court concluded on summary judgment that a pilot-owner who occasionally hosted sightseeing flights was nonetheless engaged in commercial flight, even though he wasn't locally authorized to do so; he was, as was Mr. Maclean, a "commercial operator" – a person who was for compensated for the flight within the meaning of the Federal regulations.  The Court in *Gund* distinguished *Eberli v. Cirrus Design Corp.*, 615 F.Supp.2d 1369 (S.D. Fla. 2009), which was a determination on summary judgment that a flight on a restricted ferry flight airworthiness certificate was not commercial.  Here, no such restriction is applicable to the Viking; it was a 19-seat passenger aircraft on its unrestricted way to serve that purpose, being operated by two paid commercial pilots.  At this stage of the case, the pleadings support the conclusion that this was a commercial accident.  Accordingly, even if DOHSA governed, it provides remedies to Plaintiff, rather than a grounds for dismissal.

### 3.  PRODUCTS LIABILITY

In *Gund v. Pilatus Aircraft, Ltd., supra,* the court rejected the argument made in the instant Motion to Dismiss. As the court explained, "claims for negligence, strict liability, and breach of warranty are not inconsistent with DOHSA, which explicitly applies when 'the death of an individual

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

is caused by wrongful act, neglect or default.'" 2010 WL 887376 at *3, citing *Friel v. Cessna Aircraft Co.,* 751 F.2d 1037 (9th Cir. 1985).

Plaintiff here alleges that Defendants installed a fuel system and altered the fuel system in such a way that it failed to perform – at all.  These allegations support a product liability claim. All that need be alleged (and proven) under a product liability theory is that defendant "[designed/ manufactured/ supplied/ installed/ inspected/ repaired/ rented] the [product]," was negligent in doing so, with resultant harm, *see* CACI 1220. The FAC alleges, among other things, that Defendants altered the aircraft by "installing an illegal ferry-fuel system" (¶ 187) and alleges throughout the FAC that the conduct was negligent and worse. The claim is sufficiently stated, and clearly viable at this stage of the litigation.

### 4.  TORTIOUS INTERFERENCE WITH REMAINS

Defendants argue that they owe no duty of care because that duty is limited to those who provide funeral-related services.  Dkt. 12 at p. 16.  This assertion misstates California law.  In *Catsouras v. Dep't of California Highway Patrol*, 181 Cal. App. 4th 856, (2010), the Court rejected the same contention of CHP officers who disseminated images of a decapitated accident victim. The Court instead turned to the factors enunciated in *Rowland v. Christian*, 69 Cal.2d 108 (1968) to "conclude that the CHP and its officers owed plaintiffs a duty of care not to place decedent's death images on the Internet for the purposes of vulgar spectacle." The Court found that it was foreseeable that the officers' conduct would cause emotional distress and the acts were "morally deficient." *Id*. at p.864.  *Christensen v. Superior Court*, 54 Cal.3d 868 (1991) did not restrict the remedy for that morally reprehensible conduct to certain professionals.

The same is true here; Defendants repeatedly promised to bring Lance's remains home, knowing well that if they reneged, Plaintiff would be devastated. They made these representations repeatedly, and specifically promised to undertake the responsibility of handling Lance's remains. This accident was highly publicized, as was the event that led to *Catsouras*. The whole episode foreseeably produced significant distress to a grieving widow.  *See also Saari v. Jongordon Corp.* 5 Cal.App.4th 97 (1992) (non-contracting family members are direct victims of mistreatment of

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

1  human remains).  Defendants' conduct as alleged in the FAC clearly satisfied any test of duty in

2  *Rowland* or *Christensen*.

3       Also instructive is *Sinai Temple v. Kaplan*, 54 Cal.App.3d 1103, 1111 (1976).  There, the

4  court held that an action for "tortious interference with a right to dispose of a decedent's remains

5  exists" against a relative—not a mortician or undertaker—who interferes with that right.  It reasoned

6  that "[t]he duty to bury a corpse and to preserve its remains is a legal right which courts of law will

7  recognize and protect."  *Id*.  In reaching the holding that the tort was not limited to actions against

8  morticians, the court reasoned that it is a "logical extension of the existing law."  *Id.* at n.14.

9  Specifically, the court relied on "section 868 of the Restatement Second of Torts (Tent. Draft No.

10  16)," which "recognizes an action by a person who has a right of disposition, and does not limit such

11  action to the mortuary or cemetery."  *Id.*  Accordingly, the court explained, "this action would

12  necessarily exist against *anyone* who interfered with a dead body."  *Id.* (emphasis added).  So too

13  here.

14       Here, Plaintiff properly alleged that Defendants undertook the duty to recover and preserve

15  the remains of Lance Maclean and tortiously interfered with Plaintiff's right to dispose of her

16  husband's remains.  California courts have long recognized that this tort is not limited to mortuaries

17  or cemeteries, but to "anyone who interfered with a dead body."  *Id.*  Accordingly, Defendants'

18  attempts to obtain dismissal on the grounds that they are not cemeteries should be rejected.

19       The tort of interference with human remains allows recovery for mental suffering derived

20  from the willful misuse of a body. The action is not based on a property interest in the body itself,

21  but rather an interest in the proper treatment of the body. The tort action is available for relatives of

22  the deceased and those who control the right to dispose of the body.  By statute the surviving spouse,

23  Plaintiff, has the right to control disposition of a decedent's remains.  Cal. H & S Code §7100, and

24  *see Ross v. Forest Lawn Memorial Park*, 153 Cal.App.3d 988, 993–994 (1984) (right to disposition

25  includes right to freedom from interference with that right).

26  Also contrary to Defendants' assertion, as explained above, DOHSA does not preclude a claim of

27  tortious interference with a dead body because the Plaintiff is suing for the injury caused *after* the

28  death. *See Sexton v. Carnival Corp.*, 504 F. Supp. 3d 1359, 1361 (S.D. Fla. 2020).

### 5.   CONVERSION

Defendants next protest that a claim for conversion cannot stand because it is "impossible" for them to return the property,[4] *i.e.*, Mr. Maclean's personal possessions and his remains.  While impossibility may be a convenient defense to the conversion claim, it is not one drawn from the FAC, which instead explains at length all the reasons why it has been and still is possible to collect those possessions and remains. To date, those possessions and remains still sit in a salvageable aircraft belonging to Defendants.  If Defendants wish to attempt to establish their impossibility defense, they may do so at summary judgment or later.  But it is not grounds for dismissal at this procedural posture.

California law defines conversion as "any act of dominion wrongfully asserted over another's personal property in denial of or inconsistent with his rights therein.  It is not necessary that there be a manual taking of the property; it is only necessary to show an assumption of control or ownership over the property." *In re Bailey*, 197 F.3d 997, 1000 (9th Cir. 1999).  This is what is alleged in the FAC; Defendants' protestations to the contrary are extrinsic to the Complaint, and better suited for summary judgment.

Defendants protest that the Wreck Act imposes no duty on them; to the contrary, the Wreck Act, 33 U.S.C. §409, imposes criminal liability on the owner of craft sunk in navigable waters, *U.S. v. Ohio Barge Lines*, 607 F.2d 604 (3d Cir. 1979).  Plaintiff does not contend that the Act supplies a private cause of action, but rather, it supplies a standard of care that has been breached by Defendants' persistent refusal to raise the wreckage.

### 6.   THE NMSA DOES NOT MAKE THE REQUESTED CONDUCT IN PLAINTIFF'S REQUEST FOR A MANDATORY INJUNCTION UNLAWFUL.

Contrary to Defendants' argument, neither the NMSA nor NOAA stand in the way of Defendant pursuing recovery of Lance Maclean's body.  The FAC alleges that this is not the first instance in which Defendants have made the misrepresentation that they could not legally attempt to recover the aircraft. One week after the fatal crash, Defendant Brin's agents misrepresented to

---

[4] Dkt. 12 p. 20.

21

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

Plaintiff that NOAA refused to grant permission for any underwater activities in the area.  *See* FAC ¶ 42.  But as Plaintiff already alleged, on "June 13, 2023 NOAA denied it was standing in the way of the recovery effort, stating that no permit was, in fact, required."  *Id.* ¶ 43.  At this procedural posture, Plaintiff's well-founded allegation must be accepted as true.  In their motion to dismiss, Defendants ignore these allegations and continue to use the same false excuse to avoid accountability.  These assertions are not grounds for dismissal.

### 7.   PLAINTIFF INTENDS TO VOLUNTARILY DISMISS HER CLAIMS AGAINST DEFENDANT NEAL IN HIS INDIVIDUAL CAPACITY AND DEFENDANT GOOGLE LLC

Finally, this Court need not address Defendants' arguments with respect to Defendant Theodore Neal and Defendant Google LLC, as Plaintiff intends to voluntarily dismiss her claims against both defendants.

### V.   CONCLUSION

This Court need not grapple with thorny issues of state territorial boundaries and post-death remedies because this case was improvidently removed.  It should be remanded, not dismissed, for the reasons discussed above.  California has an interest in adjudicating the wrongful deaths of pilots killed as a result of torts and legal violations committed by California residents and corporations while in California and where the wreckage and bodies lie within the GFNMS.  This is not a DOHSA case, and if it were, it should be remanded.

Nevertheless, for the reasons outlined above, the Motion to Dismiss should be denied.  DOHSA does not preempt Plaintiffs' state-law causes of action and—even to the extent that it did— it would *supply* remedies rather than extinguishing them. DOHSA is not a basis for dismissal. And Defendants' other arguments for dismissal are also without merit.

///

///

///

///

///

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

Given the reasons above, Plaintiff respectfully requests that this Court deny Defendants' Motion to Dismiss.

Dated: May 8, 2024                                    ENGSTROM, LIPSCOMB & LACK

By _____
    WALTER J. LACK
    ELIZABETH L. CROOKE
    STEVEN J. LIPSCOMB
    Attorneys for Plaintiff

Dated: May 8, 2024                                    PODHURST ORSECK, P.A.

By _____
    STEVEN C. MARKS
    KRISTINA M. INFANTE
    PABLO ROJAS
    Attorneys for Plaintiff – *Pending Pro Hac Vice*