1    Scott D. Cunningham (State Bar No.: 200413)
     Email: scunningham@condonlaw.com
2    Ivy L. Nowinski (State Bar No.: 268564)
     Email: inowinski@condonlaw.com
3    CONDON & FORSYTH LLP
     1901 Avenue of the Stars, Suite 1050
4    Los Angeles, California 90067
     Telephone: (310) 557-2030
5    Facsimile:  (310) 557-1299

6    Christopher R. Christensen (*pro hac vice*)
     Email: cchristensen@condonlaw.com
7    Mary Dow (*pro hac vice*)
     Email: mdow@condonlaw.com
8    CONDON & FORSYTH LLP
     7 Times Square
9    New York, New York 10036
     Telephone: (212) 490-9100
10   Facsimile:  (212) 370-4453

11   Attorneys for Defendants
     BAYSHORE GLOBAL MANAGEMENT LLC, SEAFLY LLC,
12   SERGEY BRIN, and THEODORE M. NEAL

13

14                    UNITED STATES DISTRICT COURT

15                  NORTHERN DISTRICT OF CALIFORNIA

16

17   MARIA MAGDALENA OLARTE,                )   Case No. 3:24-cv-2021-AMO
     individually and as personal representative of )
18   the Estate of LANCE MACLEAN, deceased, )   **DEFENDANTS BAYSHORE GLOBAL**
                                            )   **MANAGEMENT LLC, SEAFLY LLC,**
19                     Plaintiff,           )   **SERGEY BRIN, AND THEODORE**
                                            )   **NEAL'S OPPOSITION TO**
20              vs.                         )   **PLAINTIFF'S MOTION TO REMAND**
                                            )
21   THEODORE M. NEALE, a California resident )   Date:    August 1, 2024
22   and citizen, SERGEY BRIN, a California  )   Time:    2:00 p.m.
     citizen, BAYSHORE GLOBAL              )   Place:   Courtroom 10 – 19th Floor
23   MANAGEMENT LLC, a California limited  )
     liability company, GOOGLE LLC, a California )
24   limited liability company, SEAFLY LLC, a  )
     California limited liability company,     )
25   SOUTHERN CROSS AVIATION INC., and     )
     DOES 1 to 50, inclusive,              )
26                                          )
                      Defendants.           )
27                                          )
                                            )
28                                          )

1

2

**TABLE OF CONTENTS**

3    TABLE OF AUTHORITIES ............................................................................................... ii

4    INTRODUCTION ............................................................................................................... 1

5    STATEMENT OF ISSUES TO BE DECIDED ................................................................. 2

6    SUMMARY OF ARGUMENT ........................................................................................... 3

7    RELEVANT FACTUAL AND PROCEDURAL BACKGROUND ................................... 3

8    ARGUMENT ....................................................................................................................... 8

9    I.    PLAINTIFF'S STATE-LAW CLAIMS ARE SUBJECT TO REMOVAL
           PURSUANT TO 28 U.S.C. § 1331 AND *GRABLE* .................................................. 8

10
     II.   PLAINTIFF'S MOTION TO REMAND SHOULD BE DENIED
11         BECAUSE PLAINTIFF'S STATE-LAW CLAIMS ARE EMBEDDED
           WITH SUBSTANTIAL AND DISPUTED QUESTIONS OF FEDERAL
12         LAW THAT JUSTIFIED REMOVAL TO THIS COURT .................................. 11

13         A.    Plaintiff's Request for Mandatory Injunctive Relief Requires
                 Consideration of the Federal Statutory and Regulatory Scheme
14               Governing Conduct in the Marine Sanctuary ............................................ 11

15         B.    Plaintiff's Claims for Tortious Interference and Conversion
                 Require Interpretation of Two Federal Statutes Expressly
16               Incorporated into the FAC that Plaintiff Alleges Impose a Duty on
                 Defendants to Recover the Aircraft and Her Decedent's Remains.......... 14
17
           C.    The Adjudication of Plaintiff's State-Law Claims in This Court Is
18               Consistent with the Congressionally Established Division of Labor
                 Between Federal and State Courts ............................................................. 18
19
     III.  PLAINTIFF'S REQUEST FOR SEVERANCE SHOULD BE DENIED
20         BECAUSE PLAINTIFF'S ENTIRE ACTION WAS PROPERLY
           REMOVED AND ALL OF PLAINTIFF'S STATE-LAW CLAIMS
21         ARISE OUT OF THE SAME CASE OR CONTROVERSY ............................. 19

22   CONCLUSION.................................................................................................................. 22

23

24

25

26

27

28

CONDON & FORSYTH LLP
1901 Avenue of the Stars, Suite 1050
Los Angeles, California 90067-6036
Telephone: (310) 557-2030

1

# <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

**Cases**

4

*Bassidji v. Goe,*
    413 F.3d 928 (9th Cir. 2005) ....................................................................13

5

6

*Bd. of Comm'rs of Se. La. Flood Protection Auth.-East v. Tenn. Gas Pipeline Co.,*
    850 F.3d 714 (5th Cir. 2017) ....................................................................17

7

8

*City of Chicago v. Int'l Coll. Of Surgeons,*
    522 U.S. 156 (1997)....................................................................19

9

*City of Oakland v. BP PLC,*
    969 F.3d 895 (9th Cir. 2020) ....................................................8, 9, 10

10

11

*Cnty. of San Mateo v. Chevron Corp.,*
    32 F.4th 733 (9th Cir. 2022) ....................................................................8

12

13

*Cnty. of Santa Clara v. Astra USA, Inc.,*
    401 F. Supp. 2d 1022 (N.D. Cal. 2005) ..........................13, 14, 19

14

*Collin v. American Empire Insurance Co.,*
    21 Cal. App. 4th 787 (1994) ....................................................................16

15

16

*Conroy v. Regents of Univ. of California,*
    45 Cal. 4th 1244 (2009) ....................................................................16

17

18

*Corrie v. Caterpillar, Inc.,*
    503 F.3d 974 (9th Cir. 2007) ....................................................................6

19

*Empire Healthchoice Assur., Inc. v. McVeigh,*
    547 U.S. 677 (2006)....................................................................9

20

21

*Grable & Sons Metal P., Inc. v. Darue Eng'g & Mfg.,*
    545 U.S. 308 (2005)............................................................ *passim*

22

*Gunn v. Minton,*
    568 U.S. 251 (2013)....................................................................9, 18

23

24

*Harbor Towing Corporation v. Wilson,*
    470 F. Supp. 740 (D. Md. 1979) ....................................................17, 20

25

*Hopkins v. Walker,*
    244 U.S. 486 (1917)....................................................................9

26

27

*Hornish v. King County,*
    899 F.3d 680 (9th Cir. 2018) ....................................................................10

28

CONDON & FORSYTH LLP
1901 Avenue of the Stars, Suite 1050
Los Angeles, California 90067-6036
Telephone: (310) 557-2030

*Hutchinson on Behalf of Baker v. Spink*,
   126 F.3d 895 (7th Cir. 1997) ...........................................................................................21

*Kelly v. Kosuga*,
   358 U.S. 516 (1959).........................................................................................................13

*Leite v. Crane Co.*,
   749 F.3d 1117 (9th Cir. 2014) ...........................................................................................6

*Mass. Lobstermen's Ass'n v. Ross*,
   945 F.3d 535 (D.C. Cir. 2019) .....................................................................................5, 18

*McKay v. City & Cnty. of San Francisco*,
   No. 16-CV-03561 NC, 2016 WL 7425927 (N.D. Cal. Dec. 23, 2016) ...................................14

*McNair v. Oregon*,
   No. 2:16-cv-00871-SB, 2018 WL 3371595 (D. Or. Apr. 18, 2018)......................................21

*Merrell Dow Pharm. Inc. v. Thompson*,
   478 U.S. 804 (1986)........................................................................................................15

*Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Manning*,
   578 U.S. 374 (2016)........................................................................................................17

*Michigan Dep't of Env't, Great Lakes, & Energy v. Mueller*,
   No. 1:20-CV-528, 2020 WL 12698601 (W.D. Mich. June 15, 2020) .................12, 14, 17, 18

*Mitchell v. Advanced HCS, LLC*,
   28 F.4th 580 (5th Cir. 2022) ...........................................................................................17

*Morris v. Princess Cruises, Inc.*,
   236 F.3d 1061 (9th Cir. 2001) .........................................................................................20

*Next Step Advisors v. True Harvest Holdings Inc.*,
   641 F. Supp. 3d 655 (D. Ariz. 2022) ................................................................................13

*Nicodemus v. Union Pac. Corp.*,
   440 F.3d 1227 (10th Cir. 2006) .........................................................................................8

*Oakes v. Suelynn Corp.*,
   24 Cal. App. 3d 271 (1972) .............................................................................................16

*One & Ken Valley Hous. Grp. v. Maine State Hous. Auth.*,
   716 F.3d 218 (1st Cir. 2013).............................................................................................13

*Pacific Merchant Shipping Ass'n v. Goldstene*,
   639 F.3d 1154 (9th Cir. 2011) ...........................................................................................5

*Pantoja v. Countrywide Home Loans, Inc.*,
   No. C 09-01615 JW, 2009 WL 10692490 (N.D. Cal. May 12, 2009)....................................14

CONDON & FORSYTH LLP
1901 Avenue of the Stars, Suite 1050
Los Angeles, California 90067-6036
Telephone: (310) 557-2030

CONDON & FORSYTH LLP
1901 Avenue of the Stars, Suite 1050
Los Angeles, California 90067-6036
Telephone: (310) 557-2030

*Parker Drilling Management Services, Ltd. v. Newton*,
  587 U.S. ----, 139 S. Ct. 1881 (2019) ................................................................18

*Perket v. Keck*,
  3:21-CV-00251-AC, 2021 WL 4237144 (D. Or. Aug. 3, 2021) ..........................21

*Peters v. Union Pac. R.R. Co.*,
  80 F.3d 257 (8th Cir. 1996) ..................................................................................8

*Price v. Pierce*,
  823 F.2d 1114 (7th Cir. 1987) .............................................................................13

*Sauk-Suiattle Indian Tribe v. City of Seattle*,
  56 F.4th 1179 (9th Cir. 2022) ..............................................................................10

*Secretary of Interior v. California*,
  464 U.S. 312 (1984)..........................................................................................5, 18

*Smith v. Kansas City Title & Trust Co.*,
  255 U. S. 180 (1921)..........................................................................................8, 9

*Tri-Dam v. Frazier*,
  No. 22-15246, 2023 WL 3193592 (9th Cir. May 2, 2023)..............................9, 14

*United Mine Workers of Am. v. Gibbs*,
  383 U.S. 715 (1966)..............................................................................................22

*United States v. California*,
  381 U. S. 139 (1965) ..............................................................................................5

*United States v. Maine*,
  420 U.S. 515 (1975)..........................................................................................5, 18

*United States v. One Heckler-Koch Rifle*,
  629 F.2d 1250 (7th Cir. 1980) .............................................................................17

*Whyte Monkee Prods. LLC v. Netflix, Inc.*,
  No. 23-CV-03438-PCP, 2024 WL 1645455 (N.D. Cal. Apr. 16, 2024)...............10

*Zuchowski v. Alpena Pub. Sch.*,
  No. 17-CV-13345, 2018 WL 1947277 (E.D. Mich. Apr. 25, 2018)....................21

**Constitutional Provisions, Statutes, and Regulations**

15 C.F.R. § 922.82....................................................................................................11

15 C.F.R. § 922.83....................................................................................................11

16 U.S.C. § 1436.......................................................................................................11

16 U.S.C. § 1437 .................................................................................................................19

16 U.S.C. § 1441 .................................................................................................................11

28 U.S.C. § 1331 ...........................................................................................................*passim*

28 U.S.C. § 1333 ......................................................................................................6, 17, 19

28 U.S.C. § 1367 .............................................................................................3, 19, 20, 21

28 U.S.C. § 1441 ..................................................................................................................8

33 U.S.C § 403a ...............................................................................................................19

33 U.S.C § 406 .................................................................................................................19

Cal. Health & Safety Code § 7100 ..................................................................................15

Death on the High Seas Act, 46 U.S.C. § 30301 *et seq.* ...............................................6, 19

National Marine Sanctuaries Act, 16 U.S.C. § 1431 *et seq.* ......................................*passim*

River and Harbors Act of 1899, 33 U.S.C. § 401 *et seq.* ...........................................*passim*

Wreck Act, 14 U.S.C. § 86 ..........................................................................................*passim*

U.S. Const. art. VI, cl. 2 ....................................................................................................13

**Other Authorities**

4A Charles A. Wright, Arthur R. Miller & Edward H. Cooper, FEDERAL PRACTICE AND
   PROCEDURE § 3722 (1985) ..........................................................................................8

10A C. Wright, A. Miller & M. Kane, FEDERAL PRACTICE AND PROCEDURE § 2723,
   4th Ed. (2016) ............................................................................................................17

CONDON & FORSYTH LLP
1901 Avenue of the Stars, Suite 1050
Los Angeles, California 90067-6036
Telephone: (310) 557-2030

- v -

DEFENDANTS BAYSHORE GLOBAL MANAGEMENT LLC,
SEAFLY LLC, SERGEY BRIN, AND THEODORE NEAL'S
OPPOSITION TO PLAINTIFF'S MOTION TO REMAND
CASE NO.: 3:24-cv-02021-AMO

CONDON & FORSYTH LLP
1901 Avenue of the Stars, Suite 1050
Los Angeles, California 90067-6036
Telephone: (310) 557-2030

## INTRODUCTION

Plaintiff's Motion to Remand should be denied in its entirety. Defendants' Notice of Removal clearly establishes that this Court has subject matter jurisdiction over this action, which arises from the death of Plaintiff's husband in federal waters and the sinking of the decedent's remains "to the bottom of the sea … within the Greater Farallones National Marine Sanctuary," because the state-law claims and relief asserted in Plaintiff's First Amended Complaint ("FAC") raise substantial and disputed questions of federal law.

Specifically, the Notice of Removal notified Plaintiff that the action was being removed pursuant to 28 U.S.C. § 1331 because her demand for a mandatory injunction order compelling Defendants to recover the aircraft that her husband was piloting at the time of his death, and which now houses his remains and personal effects, necessarily turns on the construction of the National Marine Sanctuaries Act, 16 U.S.C. § 1431 *et seq.* ("NMSA"), as well as the scheme of federal regulations promulgated by the National Oceanic and Atmospheric Administration ("NOAA") that governs conduct in federally protected marine sanctuaries. The Notice of Removal further informed Plaintiff that her state-law claims for tortious interference with a dead body and conversion also raised federal questions because they required judicial interpretation of two additional federal laws—the Wreck Act, 14 U.S.C. § 86, and the Rivers and Harbors Act of 1899, 33 U.S.C. § 401, *et seq.* ("RHA")—which the FAC expressly cites as the source of Defendants' alleged "legal duty to recover the subject aircraft and the human remains" of Plaintiff's husband. Under long-standing United States Supreme Court precedent articulated in *Grable & Sons Metal P., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308 (2005) ("*Grable*"), judicial consideration of the significant federal issues embedded in these state-law claims justified Defendants' removal of Plaintiff's entire action to this Court, including Plaintiff's other state-law claims for wrongful death, survival, and products liability.

Despite the Notice of Removal identifying the specific federal questions warranting removal under 28 U.S.C. § 1331 and *Grable*, Plaintiff asks the Court to remand this action for completely unrelated reasons. For example, Plaintiff contends that removal was improper

DEFENDANTS BAYSHORE GLOBAL MANAGEMENT LLC,
SEAFLY LLC, SERGEY BRIN, AND THEODORE NEAL'S
OPPOSITION TO PLAINTIFF'S MOTION TO REMAND
CASE NO.: 3:24-cv-02021-AMO

- 1 -

because Federal Aviation Regulations ("FARs") and unspecified "Federal Environmental Enactments" are not proper grounds for removal. However, while the FAC does allege that Defendants violated various FARs and that the sunken aircraft's jet fuel poses an environmental risk to the marine sanctuary environment, neither of these bodies of federal law provided a basis for Defendants' removal. Additionally, while Plaintiff appears to recognize *Grable*, citing to the decision in her brief, she intentionally avoids analyzing the grounds upon which Defendants actually removed this lawsuit against *Grable*'s jurisdictional test, choosing instead to argue that the well-pleaded complaint rule and the admiralty nature of her claims automatically prohibit removal. But this is not the law.

Plaintiff's failure to address Defendants' actual bases for removal, as well as the clear authority establishing this Court's subject matter jurisdiction under *Grable*, is telling. Had Plaintiff actually considered the federal questions raised by her state-law claims against the jurisdictional requirements of *Grable*—*i.e.*, that those federal questions be substantial, disputed, and capable of removal without disturbing the division of cases between state and federal courts—it would become apparent that Defendants properly removed Plaintiff's entire action to this Court. For this reason, and the reasons explained below, Plaintiff's Motion to Remand should be denied.

## STATEMENT OF ISSUES TO BE DECIDED

1.    Whether Plaintiff's Motion to Remand should be denied because Defendants properly removed Plaintiff's state-court action to this Court pursuant to 28 U.S.C § 1331 and *Grable*, which permits removal of state-law claims that necessarily raise substantial and disputed questions of federal law.

2.    Whether Plaintiff's alternative request for severance and partial remand of her state-law claims for wrongful death, survival, and products liability should be denied because all of Plaintiff's state-law claims arise from the same case or controversy.

CONDON & FORSYTH LLP
1901 Avenue of the Stars, Suite 1050
Los Angeles, California 90067-6036
Telephone: (310) 557-2030

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

CONDON & FORSYTH LLP
1901 Avenue of the Stars, Suite 1050
Los Angeles, California 90067-6036
Telephone: (310) 557-2030

## SUMMARY OF ARGUMENT

1.      Plaintiff's Motion to Remand should be denied because this Court has federal question jurisdiction over Plaintiff's state-law claims for tortious interference with a dead body, conversion, and mandatory injunction, the adjudication of which necessarily requires resolution of substantial and disputed issues of federal law—specifically, including: whether Plaintiff is entitled to a mandatory injunction in the form of an order compelling Defendants to recover Plaintiff's decedents' remains from the Greater Farallones National Marine Sanctuary notwithstanding that such conduct would require Defendants to engage in activities prohibited by the NMSA absent approval by NOAA; and whether the Wreck Act and the RHA impose a continuing duty on Defendants to recover Plaintiff's decedent's remains and personal belongings from the bottom of the Pacific Ocean, such that Defendants can be charged with exercising control over, interfering with, and depriving Plaintiff of her property.  Moreover, allowing these questions to be decided by this Court is consistent with Congress' division of cases between state and federal courts.    Accordingly, Defendants' removal of Plaintiff's entire action was permissible under 28 U.S.C. § 1331.  *See Grable*, 545 U.S. at 314-15.

2.      Plaintiff's alternative request for severance and partial remand should be denied because the Court has supplemental jurisdiction over Plaintiff's state-law claims for wrongful death, survival, and products liability, which arise from the same "case or controversy" as her claims for tortious interference with a dead body, conversion, and mandatory injunction— namely, the May 23, 2023 accident and the unavoidable sinking of the aircraft and Plaintiff's decedent's remains to the bottom of the Greater Farallones National Marine Sanctuary.  *See* 28 U.S.C. § 1367.

## RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

This action arises from the May 20, 2023 crash of a Viking Air Ltd. DHC-6 Twin Otter Series 400 seaplane (FAA Registration No. N153QS) in the Pacific Ocean, approximately 33 miles off the coast of Half Moon Bay, California, and the sinking of the aircraft and its fatally

DEFENDANTS BAYSHORE GLOBAL MANAGEMENT LLC, SEAFLY LLC, SERGEY BRIN, AND THEODORE NEAL'S OPPOSITION TO PLAINTIFF'S MOTION TO REMAND CASE NO.: 3:24-cv-02021-AMO

- 3 -

CONDON & FORSYTH LLP
1901 Avenue of the Stars, Suite 1050
Los Angeles, California 90067-6036
Telephone: (310) 557-2030

1    injured pilot-in-command, Lance Maclean,[1] to the bottom of the sea floor within the boundaries

2    of a federally protected area known as the Greater Farallones National Marine Sanctuary (the

3    "Marine Sanctuary").  *See* Notice of Removal (ECF No. 1) at ¶¶ 6-7.[2]  Plaintiff, the surviving

4    spouse of Mr. Maclean, commenced the action in the Superior Court of the State of California

5    for the County of Santa Clara by filing a three-count complaint for wrongful death, survival, and

6    products liability against Theodore Neal, the Director of Aviation for SeaFly LLC ("SeaFly"),

7    the company allegedly responsible for maintaining the aircraft.  *See id.* at ¶¶ 1-2.

8         On February 13, 2024, Plaintiff filed a First Amended Complaint ("FAC") that, in

9    addition to Neal, named Bayshore Global Management LLC, Sergey Brin, SeaFly, Google LLC,

10   Southern Cross Aviation Inc., and Does 1-50 as additional defendants.  *See id.* at ¶¶ 4-5.  The

11   FAC also asserted three additional causes of action for tortious interference with a dead body,

12   conversion, and mandatory injunction in the form of a court order compelling "Defendants Brin,

13   Bayshore, and Google to recover the aircraft wreckage, the fuel bladders, and the human remains

14   *now lying at the bottom of the Greater Farallones National Marine Sanctuary.*"  FAC at ¶ 185

15   (emphasis added).[3]  To support her factual allegations about the location of the sunken aircraft

16   and her decedent's remains within the Marine Sanctuary, the FAC attached as Exhibit 1 the

17   GULF OF FARALLONES NATIONAL MARINE SANCTUARY FINAL MANAGEMENT PLAN (Dec. 2014)

18   (the "Marine Sanctuary Plan"), which was issued by NOAA, an agency of the U.S. Department

19

---

20   [1] The body of Mr. Maclean's co-pilot, Dean Rushfeldt, also sank with the aircraft.  Mr. Maclean
21   and Mr. Rushfeldt were the only individuals onboard the aircraft at the time of the accident.  *See*
     FAC (ECF No. 1-3) at ¶ 3.

22   [2] Because the FAC did not specify the distance between the location of the crash and the
     California coastline, Defendants' Notice of Removal attached a true and correct copy of the
23   National Transportation Safety Board's ("NTSB") Aviation Investigation Preliminary Report
     (*see* ECF No. 1-4), which provides these details.  A true and correct copy of the NTSB's
24   Aviation Investigation Preliminary Report is attached as Exhibit A to the Declaration of
     Christopher R. Christensen ("Christensen Decl."), which accompanies this Opposition.

25   [3] In an effort to minimize the significant federal issues alleged in the FAC relating to the Marine
     Sanctuary, Plaintiff's Motion to Remand avoids identifying the Marine Sanctuary as the location
26   of the aircraft, her husband's remains and his personal effects.  Plaintiff now claims that, while
     "[t]he original wreck site was over an area known as the Greater Farallones Marine Sanctuary,"
27   the "wreck was allowed to drift away," suggesting that it is no longer within this federally
     protected environment. Pl. Mot. to Remand at p. 9.  This is not what Plaintiff repeatedly alleged
28   in her FAC, however.  *See* FAC at ¶¶ 36, 179, 183, 185.

CONDON & FORSYTH LLP
1901 Avenue of the Stars, Suite 1050
Los Angeles, California 90067-6036
Telephone: (310) 557-2030

of Commerce, pursuant to its authority and obligations under NMSA to regulate activities within federally named marine sanctuaries.  *See* FAC at Ex. 1; Ex. B to Christensen Decl., Excerpts from Marine Sanctuary Plan.[4]

The Marine Sanctuary encompasses 3,295 square miles (2,488 square nautical miles) of both nearshore and offshore marine environments "between the western edge of the continental shelf and the coast of Marin and Sonoma counties."  Ex. B to Christensen Decl., Excerpts from Marine Sanctuary Plan at p. 6; *see also id.* at p. 13 ("In the Gulf of the Farallones region, the shelf reaches a width of 32 nautical miles (59 km)[]."). "The habitat covering the largest area within the [Greater Farallones National Marine Sanctuary] is the open continental shelf and the pelagic (open ocean) habitat." *Id.* at p. 21.  Thus, while a portion of the Marine Sanctuary is within the three-mile band of ocean constituting California's territorial waters, most of the marine sanctuary environment extends beyond the state's jurisdiction and is subject to the exclusive control of the federal government. *See Secretary of Interior v. California*, 464 U.S. 312, 315-16 (1984) (explaining the federal-state division of the coastal zone for States bordering the Pacific and Atlantic Oceans);[5] *Mass. Lobstermen's Ass'n v. Ross*, 945 F.3d 535, 538-39 (D.C. Cir. 2019).

On April 3, 2024, Defendants Bayshore, Brin, and SeaFly, with the consent of Defendant Neal, timely removed the action pursuant 28 U.S.C. § 1331 and *Grable*.  *See* Notice of Removal. While the Notice of Removal references the multiple federal statutes and regulations raised in and by the FAC—including, the Federal Aviation Regulations ("FARs") expressly referenced

---

[4] For ease of reference, the relevant excerpts from the Marine Sanctuary Plan are also attached as Exhibit B to the Christensen Decl.

[5] As the Supreme Court explained: "The territorial sea for States bordering on the Pacific Ocean or Atlantic Ocean extends three geographical miles seaward from the coastline.  Submerged lands subject to the jurisdiction of the United States that lie beyond the territorial sea constitute the 'Outer Continental Shelf (OCS).' By virtue of the Submerged Lands Act, passed in 1953, the coastal zone belongs to the States, while the OCS belongs to the Federal Government." 464 U.S. at 312 (citing 43 U.S.C. §§ 1301, 1302, 1311, 1331(a); *United States v. California*, 381 U. S. 139 (1965)); *see also United States v. Maine*, 420 U.S. 515, 526 (1975) (explaining that a state's coastal jurisdiction "is expressly limited to the seabed within three miles (or three marine leagues in some cases) of the coastline"); *Pacific Merchant Shipping Ass'n v. Goldstene*, 639 F.3d 1154, 1163-65 (9th Cir. 2011).

CONDON & FORSYTH LLP
1901 Avenue of the Stars, Suite 1050
Los Angeles, California 90067-6036
Telephone: (310) 557-2030

throughout the pleading and the Death on the High Seas Act, 46 U.S.C. § 30301 *et seq.* ("DOHSA")—as well as Plaintiff's allegations regarding the environmental impact of the crash (*see* FAC at ¶¶ 10, 30), Defendants' removal was not based on any alleged violations of the FARs or unspecified "Federal Environmental Enactments," or the admiralty jurisdictional statute, 28 U.S.C. § 1333, as Plaintiff argues in her Motion to Remand.  *See* Pl. Mot. to Remand (ECF No. 29) at pp. 14-15, 17-19.  Rather, as the Notice of Removal makes clear, Defendants removed the action pursuant to 28 U.S.C. § 1331 because:

- Plaintiff's demand for a mandatory injunction order compelling Defendants to recover the aircraft and Plaintiff's husband's remains and personal belongings from the Marine Sanctuary raises significant federal questions relating to the Court's authority to compel Defendants to engage in conduct within the Marine Sanctuary that is prohibited by the NMSA absent a permit or approval from NOAA; and

- Plaintiff's causes of action for tortious interference with a dead body and conversion raise substantial federal questions regarding the meaning of the Wreck Act and the RHA, because Plaintiff contends these federal statutes impose a continuing duty on Defendants to recover the aircraft and the decedent's remains and personal belongings from the bottom of the Pacific Ocean, such that Defendants can be charged with exercising dominion and control over Plaintiff's property and interfering with the right to bury her husband.

*See* Notice of Removal at pp. 1-2 and ¶¶ 19, 21-31.

Because the Ninth Circuit permits a removing party to submit external evidence in support of a removal, as well as in opposition to a motion to remand (*see Leite v. Crane Co.*, 749 F.3d 1117, 1121-22 (9th Cir. 2014); *Corrie v. Caterpillar, Inc.*, 503 F.3d 974, 980 (9th Cir. 2007)), Defendants' Notice of Removal attached a true and correct copy of an email that Plaintiff's counsel received from the California Environmental Protection Agency ("CalEPA") advising that the location of the aircraft and Plaintiff's husband's remains—which Plaintiff's counsel had informed CalEPA was approximately thirty (30) miles west of Half Moon Bay, California—was in "federal waters" and, thus, was not within the jurisdiction of CalEPA or other California state agencies.  *See* ECF No. 1-6; Ex. C to Christensen Decl., Feb. 28, 2024 CalEPA Email.  CalEPA directed Plaintiff's counsel to contact NOAA and the U.S. Coast Guard

DEFENDANTS BAYSHORE GLOBAL MANAGEMENT LLC,
SEAFLY LLC, SERGEY BRIN, AND THEODORE NEAL'S
OPPOSITION TO PLAINTIFF'S MOTION TO REMAND
CASE NO.: 3:24-cv-02021-AMO

- 6 -

CONDON & FORSYTH LLP
1901 Avenue of the Stars, Suite 1050
Los Angeles, California 90067-6036
Telephone: (310) 557-2030

1    regarding any alleged environmental harms relating to the accident.  *See id.*

2         On May 2, 2024, Plaintiff filed her Motion to Remand, contending that removal of the

3    FAC was improper because all of her claims sound in state law or admiralty and, accordingly, do

4    not "arise under" federal law within the meaning of 28 U.S.C. § 1331.  *See* Pl. Mot. to Remand

5    at pp. 1, 10 n.1, 16-17.  Tellingly, Plaintiff's Motion to Remand does not contain a single

6    reference to the NMSA or the federal regulations governing the Marine Sanctuary; nor does it

7    address the significant federal questions raised by Plaintiff's demand for a mandatory injunction

8    order compelling Defendants to engage in conduct within the Marine Sanctuary that is

9    considered unlawful unless approved by NOAA.  While Plaintiff contends that California state

10   agencies also manage the Marine Sanctuary (*see* Pl. Mot. to Remand at pp. 17-18), Plaintiff does

11   not dispute the evidence submitted with Defendants' Notice of Removal, including the NTSB

12   Preliminary Aviation Accident Report (ECF No. 1-4; *see also* Ex. A to Christensen Decl.) and

13   CalEPA's correspondence with Plaintiff's counsel (ECF No. 1-6; *see also* Ex. C to Christensen

14   Decl.), establishing that the accident occurred more than 30 miles from the California coast and

15   that the aircraft,[6] along with the remains and property of Plaintiff's decedent, are located in

16   "federal waters" outside the jurisdiction of the state of California.  *Id.*

17        Prior to Plaintiff filing her Motion to Remand, the Parties had begun briefing Defendants'

18   Motion to Dismiss.  Defendants filed their Motion to Dismiss and supporting Memorandum of

19   Law (ECF No. 12) on April 10, 2024, and Plaintiff filed her Opposition (ECF No. 30) on May 8,

20   2024.  Briefing on Defendants' Motion to Dismiss will be completed on May 22, 2024.

21

22

23

24

---

25   [6] Records produced by the U.S. Coast Guard via a Freedom of Information Act request (attached
     as Exhibit D to the Christensen Decl.) confirm that the accident occurred more than 30 miles
26   away from the California coast.  As Plaintiff admits in the FAC, the U.S. Coast Guard responded
     via helicopter to the accident site, found the aircraft floating upside down in the Pacific Ocean,
     and determined that the two pilots were deceased and could not be rescued.  *See* FAC at ¶¶ 28-
27   35.  The U.S. Coast Guard's records indicate that the aircraft and the Plaintiff's decedent were
     found at the coordinates of 37.31467n, 123.06734w, which is more than 30 miles off the
28   coastline.

CONDON & FORSYTH LLP
1901 Avenue of the Stars, Suite 1050
Los Angeles, California 90067-6036
Telephone: (310) 557-2030

## ARGUMENT

**I.     PLAINTIFF'S STATE-LAW CLAIMS ARE SUBJECT TO REMOVAL PURSUANT TO 28 U.S.C. § 1331 AND *GRABLE***

In *Grable & Sons Metal Products, Inc. v. Darue Engineering & Mfg.*, the Supreme Court articulated the longstanding, century-old doctrine that federal courts' jurisdiction over "'all civil actions arising under the Constitution, laws or treaties of the United States'" encompasses "state-law claims that implicate significant federal issues." 545 U.S. 308, 312 (2005) (quoting 28 U.S.C. § 1331 and discussing *Smith v. Kansas City Title & Trust Co.*, 255 U. S. 180, 199 (1921), where the Supreme Court held that a state-law claim gives rise to federal-question jurisdiction if the plaintiff's "right to relief depends upon the construction or application of [federal law].") The *Grable* Court explained that the doctrine comes from "the commonsense notion that a federal court ought to be able to hear claims recognized under state law that nonetheless turn on substantial questions of federal law" (545 U.S. at 312), provided that adjudication of the state-law claim in the federal forum does not "disturb[] any congressionally approved balance of federal and state judicial responsibilities." *Id.* at 314.

Thus, the relevant question here for determining whether Plaintiff's state-law claims "arise under" federal law for purposes of jurisdiction and removal under 28 U.S.C. § 1331 and § 1441(a) is not whether "plaintiff's characterization of a claim [is] based solely on state law" (*Peters v. Union Pac. R.R. Co.*, 80 F.3d 257, 260 (8th Cir. 1996)), as Plaintiff argues.[7] Indeed, a "plaintiff may not circumvent federal jurisdiction by omitting federal issues that are essential to his or her claim." *Nicodemus v. Union Pac. Corp.*, 440 F.3d 1227, 1232 (10th Cir. 2006); *see also* 4A Charles A. Wright, Arthur R. Miller & Edward H. Cooper, FEDERAL PRACTICE AND

---

[7]   Notwithstanding Plaintiff's incorrect assertion that the well-pleaded complaint rule automatically shields her state-law claims from removal, Plaintiff concedes that the Ninth Circuit views the *Grable* doctrine as "an exception" to this rule.  *See* Pl. Mot. to Remand at p. 13 (citing *City of Oakland v. BP PLC*, 969 F.3d 895, 905 (9th Cir. 2020)); *see also Cnty. of San Mateo v. Chevron Corp.*, 32 F.4th 733, 746 (9th Cir. 2022) ("*Grable* affirmed a long line of Supreme Court cases that recognized an exception to the well-pleaded complaint rule") *cert. denied sub nom. Chevron Corp. v. San Mateo Cnty., California*, 143 S. Ct. 1797 (2023).  This point of clarification does not impact Plaintiff's argument, however, since Plaintiff's state-law claims expressly invoke federal law by referencing federal statutes and asserting allegations about NOAA's authority over the Marine Sanctuary.

DEFENDANTS BAYSHORE GLOBAL MANAGEMENT LLC,
SEAFLY LLC, SERGEY BRIN, AND THEODORE NEAL'S
OPPOSITION TO PLAINTIFF'S MOTION TO REMAND
CASE NO.: 3:24-cv-02021-AMO

- 8 -

CONDON & FORSYTH LLP
1901 Avenue of the Stars, Suite 1050
Los Angeles, California 90067-6036
Telephone: (310) 557-2030

1  PROCEDURE § 3722, at 276 (1985) ("[T]he plaintiff's failure to make specific reference in the

2  complaint to a source of federal law that clearly is applicable will not prevent removal.").

3  Rather, the relevant question is whether Plaintiff's state-law claims raise a "federal issue [that is]

4  actually disputed and substantial, which a federal forum may entertain without disturbing any

5  congressionally approved balance of federal and state judicial responsibilities." *Grable*, 545 U.S.

6  at 314; *Gunn v. Minton*, 568 U.S. 251, 258 (2013) ("That is, federal jurisdiction over a state law

7  claim will lie if a federal issue is: (1) necessarily raised, (2) actually disputed, (3) substantial, and

8  (4) capable of resolution in federal court without disrupting the federal-state balance approved by

9  Congress.").

10  Under the facts alleged in the *Grable* complaint, the Supreme Court ruled that removal of

11  a state-court action for quiet title was proper because resolution of the plaintiff's claim required a

12  determination of whether the plaintiff had received sufficient notice from the Internal Revenue

13  Service before its property was seized and sold to the defendant. *See* 545 U.S. at 314-15. The

14  Supreme Court explained that the plaintiff's state-law claim satisfied the requirements of

15  embedded federal question jurisdiction because resolution of the plaintiff's claim turned on the

16  meaning of the federal tax law's notice provision, which was disputed by the parties and

17  presented "an important issue of federal law that sensibly belongs in federal court." *Id.* at 315.

18  Following the *Grable* Court's explanation and illustration of embedded federal-question

19  jurisdiction, the Ninth Circuit has recognized that a state-law claim is removable to federal court

20  pursuant to 28 U.S.C. § 1331 when it "raises substantial questions as to the interpretation or

21  validity of a federal statute, … challenges the functioning of a federal agency or program, … or

22  challenges the actions of a federal agency." *City of Oakland*, 969 F.3d at 905  (citing *Grable*, 545

23  U.S. at 310; *Smith*, 255 U.S. at 201; *Hopkins v. Walker*, 244 U.S. 486, 489-90 (1917), and

24  *Empire Healthchoice Assur., Inc. v. McVeigh*, 547 U.S. 677, 699-700 (2006)); *see also Tri-Dam*

25  *v. Frazier*, No. 22-15246, 2023 WL 3193592, at *2 (9th Cir. May 2, 2023) (state-law public

26  nuisance claim properly removed because it required judicial interpretation of a license issued by

27  the Federal Energy Regulatory Commission under the Federal Powers Act, which impacted both

28

CONDON & FORSYTH LLP
1901 Avenue of the Stars, Suite 1050
Los Angeles, California 90067-6036
Telephone: (310) 557-2030

1   the defendant's duties under the license and the Commission's obligations under the Act, and

2   "the federal government has a strong interest 'in maintaining control over [the] engineering,

3   economic and financial soundness' of FERC-licensed projects");[8] *Sauk-Suiattle Indian Tribe v.*

4   *City of Seattle*, 56 F.4th 1179, 1184 (9th Cir. 2022) (action for declaratory and injunctive relief

5   under Washington law properly removed under federal-question jurisdiction because plaintiff's

6   request for declarations required consideration of whether municipality violated Congressional

7   Acts); *Hornish v. King County*, 899 F.3d 680, 688-91 (9th Cir. 2018) (substantial, disputed

8   federal question presented by state-law declaratory judgment action that required district court to

9   interpret federal law to determine the scope of the County's rights under a railroad easement);

10  *Whyte Monkee Prods. LLC v. Netflix, Inc.*, No. 23-CV-03438-PCP, 2024 WL 1645455, at *3-5

11  (N.D. Cal. Apr. 16, 2024) (denying plaintiffs' motion for remand where at least one of plaintiffs'

12  claims required application of ownership principles under the Copyright Act to determine which

13  of the two plaintiffs owned the copyrighted works—"a conflict necessarily raised by plaintiffs'

14  complaint").

15       Despite acknowledging the existence of *Grable* in her Motion to Remand (*see* Pl. Mot. to

16  Remand at p. 13), Plaintiff does not even attempt to analyze Defendants' grounds for removal

17  against the Supreme Court's test for embedded federal question jurisdiction, choosing instead to

18  focus on issues not relevant to Defendants' grounds for removal.  Plaintiff's choice to ignore

19  *Grable* is not surprising because evaluating the federal issues expressly raised in Defendants'

20  Notice of Removal against *Grable*'s jurisdictional requirements—as Defendants did in their

21  Notice of Removal and do again here—confirms that Plaintiff's state-law claims for tortious

22  interference with a dead body, conversion, and mandatory injunction give this Court subject

23  matter and removal jurisdiction over all six of Plaintiff's state-law claims.   Accordingly,

24  Defendants' removal of the entire action was proper, and Plaintiff's Motion to Remand should be

25  denied.

26

27

28  ───────────────

[8] In contrast, the public nuisance claim at issue in *City of Oakland* did not require judicial interpretation of a federal statute or license. 969 F.3d at 905.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

CONDON & FORSYTH LLP
1901 Avenue of the Stars, Suite 1050
Los Angeles, California 90067-6036
Telephone: (310) 557-2030

## II.   PLAINTIFF'S MOTION TO REMAND SHOULD BE DENIED BECAUSE PLAINTIFF'S STATE-LAW CLAIMS ARE EMBEDDED WITH SUBSTANTIAL AND DISPUTED QUESTIONS OF FEDERAL LAW THAT JUSTIFIED REMOVAL TO THIS COURT

### A.   Plaintiff's Request for Mandatory Injunctive Relief Requires Consideration of the Federal Statutory and Regulatory Scheme Governing Conduct in the Marine Sanctuary

Plaintiff's demand for a mandatory injunction under California law necessarily raises a substantial, disputed question of federal law because it requires the Court to interpret the NMSA and NOAA's regulatory scheme governing conduct in the Marine Sanctuary to determine whether Plaintiff is entitled to an order compelling Defendants to recover the aircraft and the remains of her husband from the Marine Sanctuary's seabed floor. While Plaintiff's Motion belatedly tries to distance her requested relief from the Marine Sanctuary—never once mentioning the NMSA, and now suggesting that the aircraft wreckage may have drifted out of this federally protected area (*see* Pl. Mot. to Remand at pp. 8-9, 19)—Plaintiff cannot run away from the FAC's repeated emphasis on the location of the aircraft and her husband's remains as "now in the Greater Farallones National Marine Sanctuary." FAC at ¶¶ 36, 179, 183, 185. Nor can Plaintiff ignore the fact that these allegations necessarily require the Court to consider and interpret the federal scheme that governs conduct in the Marine Sanctuary to determine whether an order compelling Defendants to disturb this admittedly "delicate ecosystem" (*id.* at ¶ 183) violates federal law.

As Defendants' Notice of Removal makes clear, the NMSA makes it "unlawful" for any person to "injure any [marine] sanctuary resource" (16 U.S.C. § 1436(1)) or violate NOAA regulations prohibiting activities that may "alter[] the submerged lands of the Sanctuary in any way," absent a permit or approval from NOAA. 15 C.F.R. §§ 922.82(a)(5), 922.83; *see also* 16 U.S.C. § 1441. Plaintiff's Motion does not challenge Defendants' position that the recovery undertaking requested in the FAC would require disturbing the seabed of the Marine Sanctuary—nor could it, as Plaintiff is expressly demanding that the sunken aircraft that houses the remains and personal belongings of Plaintiff's decedent be extracted from "the bottom of the

DEFENDANTS BAYSHORE GLOBAL MANAGEMENT LLC, SEAFLY LLC, SERGEY BRIN, AND THEODORE NEAL'S OPPOSITION TO PLAINTIFF'S MOTION TO REMAND CASE NO.: 3:24-cv-02021-AMO

- 11 -

Condon & Forsyth LLP
1901 Avenue of the Stars, Suite 1050
Los Angeles, California 90067-6036
Telephone: (310) 557-2030

1    sea … within the Greater Farallones National Marine Sanctuary," where they "now rest." FAC at

2    ¶¶ 35-36, 179.  Now ignoring the plain language of the federal statute and regulations, Plaintiff

3    disputes that her "state law remedy" for a mandatory injunction potentially violates federal law.

4    *See* Pl. Mot. to Remand at p. 19.  Rather, as alleged in the FAC and further disputed in her

5    Opposition to Defendants' Motion to Dismiss, Plaintiff contends that nothing, not even NOAA's

6    authorization, "is standing in the way of the recovery effort." FAC at ¶ 43; Pl. Opp. to Defs. Mot.

7    to Dismiss (ECF No. 30) at pp. 21-22.  Plaintiff's contention necessarily raises a disputed,

8    substantial issue of federal law regarding the Parties' conflicting understanding of the NMSA,

9    including whether it prohibits Plaintiff's demand for mandatory injunctive relief absent NOAA's

10   approval, which has not been given.

11          In *Michigan Dep't of Env't, Great Lakes, & Energy v. Mueller*, the plaintiffs' state-law

12   complaint included a similar demand for relief in the form of an order compelling the defendants

13   to repair and replace a dam on the Tittabawassee River that runs through Michigan.  *See* No.

14   1:20-CV-528, 2020 WL 12698601, at *1 (W.D. Mich. June 15, 2020).  The defendant owners

15   and operators of the dam removed the action to federal court, citing significant federal questions

16   raised by the plaintiffs' claims and request for relief, even though "[o]n the face of the complaint,

17   none of the Plaintiffs' causes of action raise federal issues." *Id.* at *2.  Acknowledging that the

18   plaintiffs' complaint must therefore be analyzed under *Grable*, the court noted that, under the

19   Rivers and Harbors Act, the Tittabawassee River is "a water of the United States," and, thus, "it

20   appears that any restoration work must be approved by the United States Army Corps of

21   Engineers." *Id.* (citing  33 U.S.C. § 401).  In light of this, the court found that "[t]o determine

22   whether Plaintiffs are entitled to the relief they request, the Court must consider federal law,"

23   including whether the requested relief "must be approved by a federal agency." *Id.*  Accordingly,

24   the court denied the plaintiffs' motion to remand because, "[w]hile at first glance the complaint

25   presents only state law claims, there are substantial 'federal ingredients' lurking in the

26   allegations that must be considered as part of the ultimate analysis such that this Court has

27

28

jurisdiction to hear this case." *Id.*[9]

The same is true here. There is no way this Court, or any court, can determine whether Plaintiff is entitled to a mandatory injunction without resolving the Parties' disagreement as to the meaning of the federal statutory and regulatory scheme that governs conduct in the Marine Sanctuary, including the Court's authority to compel activities that are potentially unlawful under the NMSA without NOAA's approval. Indeed, interpretation of the NMSA and NOAA's regulatory authority over the Marine Sanctuary cannot be avoided, as it is black-letter law that federal law is "the supreme Law of the Land" (U.S. Const. art. VI, cl. 2), and a court cannot issue an order that would require a defendant to violate it. *See Kelly v. Kosuga*, 358 U.S. 516, 520-21 (1959) (concluding that courts may not "enforc[e] the precise conduct made unlawful" by an act of Congress); *Next Step Advisors v. True Harvest Holdings Inc.*, 641 F. Supp. 3d 655, 657 (D. Ariz. 2022) ("Federal courts cannot award relief that would require violation of federal law.") (*citing Bassidji v. Goe*, 413 F.3d 928, 938-39 (9th Cir. 2005)).

Plaintiff's single-paragraph argument that her demand for a mandatory injunction merely seeks to enforce Defendants' alleged "representations and promises to raise the wreck and return Lance MacLean's remains" (Pl. Mot. to Remand at p. 19) does not, and cannot, negate the federal question raised by her demand for relief. In fact, Plaintiff's position confirms that the same federal question is embedded in her tortious interference claim, which is based, in part, on Plaintiff's allegations that Defendants misrepresented whether a NOAA permit was required to conduct recovery operations in the Marine Sanctuary. *See* FAC at ¶¶ 42-43, 47, 132(b) and (d), 133(e)-(f); *Cnty. of Santa Clara v. Astra USA, Inc.*, 401 F. Supp. 2d 1022, 1027-28 (N.D. Cal. 2005) (ruling that state-law claim for violation of California law required resolution of a federal question based on the plaintiff's allegations that the defendants acted fraudulently by claiming

---

[9] Numerous other courts have ruled that a state-law claim raises a substantial federal question where the claim raises questions about the approval given or required by a federal agency. *See One & Ken Valley Hous. Grp. v. Maine State Hous. Auth.*, 716 F.3d 218, 224 (1st Cir. 2013) (state-law claims involving disputes in contracts "approved by a federal agency and signed by a federal official" raised substantial federal question); *Price v. Pierce*, 823 F.2d 1114, 1120 (7th Cir. 1987) (contract that had been approved by federal agency presented a federal question).

DEFENDANTS BAYSHORE GLOBAL MANAGEMENT LLC,
SEAFLY LLC, SERGEY BRIN, AND THEODORE NEAL'S
OPPOSITION TO PLAINTIFF'S MOTION TO REMAND
CASE NO.: 3:24-cv-02021-AMO

- 13 -

CONDON & FORSYTH LLP
1901 Avenue of the Stars, Suite 1050
Los Angeles, California 90067-6036
Telephone: (310) 557-2030

1    that they were complying with federal law when they were not).

2         Thus, adjudication of both the state-law claims and relief asserted in Plaintiff's FAC not

3    only require interpretation of a federal statute and complex regulatory scheme, but they also

4    require consideration of a court's authority to compel conduct in an area subject to the exclusive

5    jurisdiction of a federal agency.   All of these issues present substantial and disputed issues of

6    federal law that satisfy *Grable* and warranted the removal of Plaintiff's entire action to this

7    Court.  *See Grable*, 545 U.S. at 314-15; *Tri-Dam*, 2023 WL 3193592, at *2; *Michigan Dep't of

8    Env't, Great Lakes, & Energy*, 2020 WL 12698601, at *2; *see also McKay v. City & Cnty. of San

9    Francisco*, No. 16-CV-03561 NC, 2016 WL 7425927, at *4-5 (N.D. Cal. Dec. 23, 2016) (ruling

10   that the removal of plaintiffs' state-law claims was proper because plaintiffs' request for relief

11   included a court order that would "challenge[] the validity of the [Federal Aviation

12   Administration's] actions and its observance of its statutory mandate," and further explaining

13   that "[i]f the Court were to remand this case to state court, that court … would potentially be

14   examining the validity of federal regulations and a final agency decision"); *Pantoja v.

15   Countrywide Home Loans, Inc.,* No. C 09-01615 JW, 2009 WL 10692490, at *1 (N.D. Cal. May

16   12, 2009) ("[T]he fact that Plaintiff's equitable relief hinges on Defendants' compliance with a

17   federal statute gives rise to a federal question under § 1331."); *Cnty. of Santa Clara*, 401 F.

18   Supp. 2d at 1027-28 (noting that federal issues that satisfy the "substantial" requirement of

19   *Grable* include those that "directly affect the functioning of the federal government, those in an

20   area reserved for exclusive federal jurisdiction, and those that impact a complex federal

21   regulatory scheme").

22        Plaintiff's Motion to Remand must be denied because Plaintiff's FAC necessarily raises

23   substantial and disputed issues of federal law that are properly before this Court.

24        **B.    Plaintiff's Claims for Tortious Interference and Conversion Require
               Interpretation of Two Federal Statutes Expressly Incorporated into
25             the FAC that Plaintiff Alleges Impose a Duty on Defendants to
               Recover the Aircraft and Her Decedent's Remains**
26

27        Plaintiff concedes that her FAC expressly cites the Wreck Act, 14 U.S.C. § 86, and the

28   Rivers and Harbors Act of 1899, 33 U.S.C. § 401, *et seq.* ("RHA"), to allege that Defendants

Condon & Forsyth LLP
1901 Avenue of the Stars, Suite 1050
Los Angeles, California 90067-6036
Telephone: (310) 557-2030

- 14 -

DEFENDANTS BAYSHORE GLOBAL MANAGEMENT LLC,
SEAFLY LLC, SERGEY BRIN, AND THEODORE NEAL'S
OPPOSITION TO PLAINTIFF'S MOTION TO REMAND
CASE NO.: 3:24-cv-02021-AMO

CONDON & FORSYTH LLP
1901 Avenue of the Stars, Suite 1050
Los Angeles, California 90067-6036
Telephone: (310) 557-2030

1   "had a legal duty to recover the subject aircraft and the human remains of" her husband in order

2   to plead her claims for tortious interference with a dead body and conversion under California

3   law. Plaintiff contends, however, that these federal statutes are not essential to her claims—that

4   she was "merely making [the] observation" that "the Wreck Act obliges an owner of a sunken

5   vessel that obstructs a waterway to remove it"—because California law, specifically § 7100(a)(2)

6   of California's Health & Safety Code, gives Plaintiff the right to possess the remains and

7   personal belongings of her late husband. Pl. Mot. to Remand at p. 16.  Plaintiff's argument is

8   fundamentally flawed, however, because the property rights allegedly afforded to Plaintiff under

9   this California law cannot, without more, establish Defendants' liability for tortious interference

10  with a dead body and conversion of her property, which respectively require the existence of a

11  duty and the exercise of control over Plaintiffs' property.  *See Merrell Dow Pharm. Inc. v.*

12  *Thompson*, 478 U.S. 804, 808–09 (1986) (federal question jurisdiction exists where "vindication

13  of a right under state law necessarily turn[s] on some construction of federal law").  Based on the

14  facts alleged in the FAC, the only way Plaintiff can show that Defendants tortiously interfered

15  with the right to bury her husband and deprived her right to take possession of his body and

16  belongings is through the FAC's express incorporation of the Wreck Act and the RHA.  For this

17  reason, adjudication of Plaintiff's tortious interference with a dead body and conversion claims

18  necessarily turn on the construction of these federal statutes, thus providing the Court with a

19  second, independent basis for exercising federal question jurisdiction over Plaintiff's state-court

20  action.

21      As alleged in the FAC, § 7100(a)(2) of California's Health & Safety Code provides

22  Plaintiff with a "legal right to lay her husband to rest," but it does not impose a duty on

23  Defendants to recover his remains. FAC at ¶¶ 129, 198; *see also* Cal. Health & Safety Code §

24  7100(a)(2) ("The right to control the disposition of the remains of a deceased person, the location

25  and conditions of interment, and arrangements for funeral goods and services to be provided …

26  vests in … [t]he competent surviving spouse.").  However, as with any negligence claim, the

27  existence of a duty is an essential element to Plaintiff's state-law claim for tortious interference

28

1   with a dead body.  *See Conroy v. Regents of Univ. of Cal.*, 45 Cal. 4th 1244, 1252-55 (2009).

2   Despite Plaintiff's attempt to minimize the significance of the FAC's incorporation of federal

3   law to establish such a duty, it is indisputable that the only allegation in the entire FAC that

4   Defendants "had a legal duty to recover the subject aircraft and the human remains of"

5   Plaintiff's decedent arises from Plaintiff's express reference to the Wreck Act and the RHA.

6   FAC at ¶ 196.

7        Likewise, a California state-law claim for conversion requires that Defendants exercised

8   dominion over the decedent's remains and his personal effects and prevented Plaintiff from

9   taking possession of them.  *See Collin v. American Empire Insurance Co.*, 21 Cal. App. 4th 787,

10  812 (1994); *Oakes v. Suelynn Corp.*, 24 Cal. App. 3d 271, 278 (1972).  Plaintiff does not, and

11  cannot, allege that Defendants had possession or control over the remains and belongings of her

12  decedent, however, as she admits that they unavoidably sunk to the bottom of the ocean floor.

13  *See* FAC at ¶ 35.  Accordingly, Plaintiff's sole means for attempting to establish that Defendants

14  exercised control over her husband's body and belongings is through the duties imposed by these

15  federal statutes and Defendants' alleged "decision not to recover the aircraft and the human

16  remains of [the] decedent" (*id.* at ¶¶ 196, 200) in violation of these laws.

17       Not surprisingly, the Parties dispute whether the duties and obligations imposed by the

18  Wreck Act and the RHA on the owners of sunken vessels applies to Defendants, as is evident

19  from the Parties' briefing on Defendants' Motion to Dismiss.  *See* Defs. Mot. to Dismiss (ECF

20  No. 12) at pp. 18-19; Pl. Opp. to Defs. Mot. to Dismiss (ECF No. 30) at p. 21.  While Plaintiff

21  attempts to avoid the significance of the Parties' conflicting interpretations of federal law by

22  claiming in her Opposition to Defendants' Motion to Dismiss that the Wreck Act "supplies a

23  standard of care that has been breached by Defendants' persistent refusal to raise the wreckage"

24  (*id.*),[10]  Plaintiff's argument ignores the first federal question that must be answered before the

25

26  [10] The significance that Plaintiff places on the Wreck Act in her Opposition to Defendants'
    Motion to Dismiss conflicts with the position she advances in her Motion to Remand, which
27  characterizes the FAC's express reference to the Wreck Act as a "mere observation" that
    Plaintiff does not intend to rely upon to litigate her claims. Pl. Mot. to Remand at p. 16.  Plaintiff
28  cannot have it both ways, as she herself advocates—albeit without proper support—that the
    Court should treat arguments contained in the Parties' briefing on the Defendants' Motion to

CONDON & FORSYTH LLP
1901 Avenue of the Stars, Suite 1050
Los Angeles, California 90067-6036
Telephone: (310) 557-2030

standard of care can be considered—whether these federal statutes impose a duty on Defendants in the first place.  *See* FAC at ¶ 196.

Where a state-law claim turns on the existence of a duty imposed by federal law—including the duties imposed by the RHA—courts agree that the state-law claim necessarily raises a federal question that satisfies the substantiality requirement of *Grable*.  *See Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Manning*, 578 U.S. 374, 383 (2016) (holding that federal question jurisdiction existed because the suit, "even though asserting a state-created claim, is also 'brought to enforce' a duty created by the [Securities] Exchange Act"); *Mitchell v. Advanced HCS, LLC*, 28 F.4th 580, 588 (5th Cir. 2022) (a state-law claim "premised on the existence of a duty established by federal law creates a federal question"); *Bd. of Comm'rs of Se. La. Flood Protection Auth.-East v. Tenn. Gas Pipeline Co.*, 850 F.3d 714, 722-23 (5th Cir. 2017) ("The absence of any state law grounding for the duty that the [plaintiff] would need to establish for the Defendants to be liable means that that duty would have to be drawn from federal law," including the RHA); *Michigan Dep't of Env't, Great Lakes, & Energy*, 2020 WL 12698601, at *2 (state-law claims requiring interpretation of the RHA raised substantial federal question justifying removal).[11]  Accordingly, because Plaintiff's claims for tortious interference and conversion likewise require interpretation of the Wreck Act and the RHA, these state-law claims raise a second disputed and substantial federal question that justified the removal of Plaintiff's entire action to this Court.

---

Dismiss as "judicial admissions."  *Id.* at p. 17; *see also id.* (citing *United States v. One Heckler-Koch Rifle*, 629 F.2d 1250, 1253 (7th Cir. 1980), and 10A C. Wright, A. Miller & M. Kane, FEDERAL PRACTICE AND PROCEDURE § 2723, 4th Ed. (2016), which, contrary to Plaintiff's assertion, only stand for the proposition that arguments contained in the brief of a party *opposing* a summary judgment motion may be considered admissions; thus, to the extent this rule applies to a motion to dismiss, it would only apply to Plaintiff, as she is the party opposing that motion).

[11] Plaintiff provides no support for her assertion that state-law claims requiring interpretation of the Wreck Act or the RHA are not removable.  *See* Pl. Mot. to Remand at p. 15.  Although Plaintiff cites *Harbor Towing Corporation v. Wilson*, 470 F. Supp. 740 (D. Md. 1979), this case does not address the court's subject matter jurisdiction over actions removed pursuant to a federal question raised by either of these federal statutes.  Rather, the court's analysis in *Harbor Towing Corporation* was focused solely on the removability of the action pursuant to admiralty jurisdiction.  *See id.* at 741-42.  Here, however, Defendants have not removed Plaintiff's action pursuant to 28 U.S.C. § 1333.  Defendants' Notice of Removal clearly states that removal was made pursuant to 28 U.S.C. § 1331 and *Grable*.  *See* Notice of Removal at ¶¶ 21-22.

DEFENDANTS BAYSHORE GLOBAL MANAGEMENT LLC,
SEAFLY LLC, SERGEY BRIN, AND THEODORE NEAL'S
OPPOSITION TO PLAINTIFF'S MOTION TO REMAND
CASE NO.: 3:24-cv-02021-AMO

- 17 -

CONDON & FORSYTH LLP
1901 Avenue of the Stars, Suite 1050
Los Angeles, California 90067-6036
Telephone: (310) 557-2030

**C.     The Adjudication of Plaintiff's State-Law Claims in This Court Is Consistent with the Congressionally Established Division of Labor Between Federal and State Courts**

The substantial and disputed questions of federal law raised by Plaintiff's FAC should be decided in this Court because there is no risk that litigating Plaintiff's state-law claims here would "disrupt Congress' intended division of labor between state and federal courts." *Gunn*, 568 U.S. at 258 (citing *Grable*, 545 U.S. 313-14).  Like the Supreme Court recognized in *Grable*, Plaintiff's action presents a rare case where California state-law claims for tortious interference with a dead body, conversion, and mandatory injunction intersect with the unique body of federal laws and regulations that govern the Marine Sanctuary and an aircraft that sank in federal waters.  *See Grable*, 545 U.S. at 315.  Accordingly, the likelihood that the adjudication of Plaintiff's action in this Court would lead to a disproportionate number of future tortious interference, conversion, and mandatory injunction claims being litigated in federal court is, at most, "microscopic." *Id.*  Moreover, the adjudication of Plaintiff's entire action in this Court is consistent with Congress' determination that matters concerning conduct in federal waters, including the portion of the Marine Sanctuary where the aircraft and Plaintiff's decedent's remains are allegedly located (*see* FAC at ¶¶ 36, 179, 183, 185; *see also* Ex. C to Christensen Decl., Feb. 28, 2024 CalEPA Email), fall within the jurisdiction of the federal government.  *See Mass. Lobstermen's Ass'n*, 945 F.3d at 543 ("'[T]he Federal Government exercise[s] exclusive' authority over th[e] portion of the ocean" that is between 12 and 200 nautical miles off the nation's coasts) (citing *Parker Drilling Management Services, Ltd. v. Newton*, 587 U.S. ----, 139 S. Ct. 1881, 1887 (2019)).

Congress' intention that the federal branches decide issues concerning activities in the waters and on the seabed located more than three miles off the shores of California and other coastal states is reflected in numerous federal statutes—including the NMSA and RHA that are at issue here.  *See Mass. Lobstermen's Ass'n*, 945 F.3d at 539; *Michigan Dep't of Env't, Great Lakes, & Energy*, 2020 WL 12698601, at *2 (RHA); *see also Secretary of Interior v. California*, 464 U.S. at 312; *United States v. Maine*, 420 U.S. at 526.  These statutes respectively recognize

CONDON & FORSYTH LLP
1901 Avenue of the Stars, Suite 1050
Los Angeles, California 90067-6036
Telephone: (310) 557-2030

federal district courts as having jurisdiction over actions for damages and injunctive relief relating to unlawful conduct in a marine sanctuary (*see* NMSA, 16 U.S.C. § 1437(d) and (i)) and the removal of sunken vessels from federal navigable waters. *See* RHA, 33 U.S. Code §§ 403a, 406. In this respect, only an order remanding Plaintiff's action to state court risks "disturbing [the] congressionally approved balance of federal and state judicial responsibilities." *Grable*, 545 U.S. at 314.

The Court should deny Plaintiff's Motion to Remand and continue to exercise jurisdiction over Plaintiff's entire action, which raises substantial and disputed questions of federal law that belong in federal court.

### III. PLAINTIFF'S REQUEST FOR SEVERANCE SHOULD BE DENIED BECAUSE PLAINTIFF'S ENTIRE ACTION WAS PROPERLY REMOVED AND ALL OF PLAINTIFF'S STATE-LAW CLAIMS ARISE OUT OF THE SAME CASE OR CONTROVERSY

The law is clear that "even if only one" of Plaintiff's claims falls within the Court's federal-question jurisdiction, this Court has the authority to hear Plaintiff's entire action. *Cnty. of Santa Clara*, 401 F. Supp. 2d at 1025–26; *see City of Chicago v. Int'l Coll. Of Surgeons*, 522 U.S. 156, 166 (1997). Plaintiff attempts to avoid this rule by arguing that her claims sound in admiralty such that 28 U.S.C. § 1333 prohibits removal or, alternatively, requires severance. *See* Pl. Mot. to Remand at pp. 10 n.1, 17, 19-21. Plaintiff's argument confuses the issues, however, as Defendants' removal was not based on the Court's authority to hear admiralty claims—it was based on the substantial and disputed federal questions raised by Plaintiff's claims for tortious interference, conversion, and mandatory injunction. Because these claims arise from the same "case or controversy" as Plaintiff's claims for wrongful death, survival, and products liability, Plaintiff's alternative request for severance and partial remand should not be allowed. 28 U.S.C. § 1367.

While Defendant's Motion to Dismiss makes clear that DOHSA preempts all of Plaintiff's claims for relief under state law, Plaintiff incorrectly construes Defendants' arguments as prohibiting the removal of all of her claims under 28 U.S.C. § 1333, which recognizes that admiralty claims may be brought in federal or state court. Defendants' removal was not based

CONDON & FORSYTH LLP
1901 Avenue of the Stars, Suite 1050
Los Angeles, California 90067-6036
Telephone: (310) 557-2030

DEFENDANTS BAYSHORE GLOBAL MANAGEMENT LLC,
SEAFLY LLC, SERGEY BRIN, AND THEODORE NEAL'S
OPPOSITION TO PLAINTIFF'S MOTION TO REMAND
CASE NO.: 3:24-cv-02021-AMO

- 19 -

CONDON & FORSYTH LLP
1901 Avenue of the Stars, Suite 1050
Los Angeles, California 90067-6036
Telephone: (310) 557-2030

on the Court's admiralty jurisdiction, however, as Defendants' Notice of Removal expressly states that this Court has subject matter and removal jurisdiction because of the federal-question statute and *Grable*. *See* Notice of Removal at pp. 1-2 and ¶¶ 19, 21-31. The fact that DOHSA preempts all of Plaintiff's claims does not render Defendants' federal-question removal improper. As Plaintiff expressly concedes in her Motion to Remand, admiralty claims are removable if there is another jurisdictional basis for removal, "'such as … federal question jurisdiction.'" Pl. Mot. to Remand at p. 17 (quoting *Morris v. Princess Cruises, Inc.*, 236 F.3d 1061, 1069 (9th Cir. 2001)); s*ee also Harbor Towing Corp.*, 470 F. Supp. at 741 (holding—contrary to Plaintiff's citation to the case—that an admiralty claim is removable if it "could be removed as a federal question case for reasons other than its maritime character"). As established above, Plaintiff's claims for tortious interference, conversion, and mandatory injunction raise substantial and disputed federal questions that permitted Defendants to remove Plaintiff's entire action pursuant to 28 U.S.C. § 1331. For this reason, Plaintiff is not entitled to a remand.

Moreover, Plaintiff has not provided any support that would justify her alternative request that the Court sever and remand her claims for wrongful death, survival, and products liability. All of Plaintiff's claims arise from the "same case or controversy" (28 U.S.C. § 1367)—that is, the crash of the aircraft in the Pacific Ocean more than 30 miles away from the California coast, and the unavoidable sinking of the aircraft and Plaintiff's decedent to the bottom of the ocean floor within the boundaries of the Marine Sanctuary. *See, generally*, FAC. While Plaintiff broadly asserts that her claims for tortious interference, conversion, and mandatory injunction are based on events subsequent to the accident, it is impossible to rationally separate any of these causes of action from the accident itself, as all three are predicated on the location of the decedent's remains at the bottom of the Marine Sanctuary as a result of the crash in the Pacific Ocean. *See id.* at ¶¶ 128-134, 176-185, 195-207.

None of the cases that Plaintiff cites as examples of where severance was allowed come close to the interlocked set of factual allegations and claims that Plaintiff has asserted against the

DEFENDANTS BAYSHORE GLOBAL MANAGEMENT LLC,
SEAFLY LLC, SERGEY BRIN, AND THEODORE NEAL'S
OPPOSITION TO PLAINTIFF'S MOTION TO REMAND
CASE NO.: 3:24-cv-02021-AMO

- 20 -

Defendants in this case. *See* Pl. Mot. to Remand at p. 20. *Hutchinson on Behalf of Baker v. Spink*, 126 F.3d 895, 902 (7th Cir. 1997), for example, involved two sets of distinct claims against two sets of defendants—Constitutional due process claims against the social workers and foster parents in charge of caring for the plaintiff's son, and negligence claims against the manufacturer of the farm equipment that fatally injured the plaintiff's son. A similar divide was present in *McNair v. Oregon*, No. 2:16-cv-00871-SB, 2018 WL 3371595, at *2 (D. Or. Apr. 18, 2018), where the court found that an inmate's first set of Constitutional claims against prison personnel was factually distinct from the inmate's second set of medical malpractice claims against a hospital and doctor who treated him for injuries sustained at the prison. *See also Perket v. Keck*, 3:21-CV-00251-AC, 2021 WL 4237144, at *6 (D. Or. Aug. 3, 2021), *report and recommendation adopted*, 2021 WL 4226049 (D. Or. Sept. 15, 2021) (distinguishing between the facts relating to the car accident that injured plaintiff and gave rise to her personal injury claim against the driver, and the facts relating to plaintiff's claims against her employer for failing to provide her disability insurance and terminating her for being pregnant).

In contrast to these cases, Plaintiff is seeking to hold the same set of Defendants liable for the death of her husband and the failure to recover his sunken remains. *See Zuchowski v. Alpena Pub. Sch.*, No. 17-CV-13345, 2018 WL 1947277, at *5 (E.D. Mich. Apr. 25, 2018) (distinguishing *Hutchinson* and finding supplemental jurisdiction existed because a "prominent thread between the claims is, of course, the underlying injury: MZ's death"). There is no basis for separating tort claims arising from the same accident, in the same unique Marine Sanctuary location, against the same set of Defendants into two separate lawsuits. *See* 28 U.S.C. § 1367(c) (recognizing four circumstances where a district court may "decline" to exercise supplemental jurisdiction, none of which Plaintiff has identified as being applicable here).[12] In fact, doing so would only cause more inconvenience to the parties and added stress on the already taxed federal

---

[12] The four circumstances are: if "(1) the [severed] claim raises a novel or complex issue of State law, (2) the [severed] claim substantially predominates over the claim or claims over which the district court has original jurisdiction, (3) the district court has dismissed all claims over which it has original jurisdiction, or (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction." 28 U.S.C. § 1367.

CONDON & FORSYTH LLP
1901 Avenue of the Stars, Suite 1050
Los Angeles, California 90067-6036
Telephone: (310) 557-2030

1    and state judiciaries. *See United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966)

2    (recognizing that supplemental jurisdiction "is a doctrine of discretion, not of plaintiff's right,"

3    that requires consideration of " judicial economy, convenience and fairness to litigants").

4         The Court should deny Plaintiff's alternative request for severance and continue to

5    exercise jurisdiction over Plaintiff's entire action pursuant to its authority to hear state-law

6    claims that present substantial and disputed questions of federal law.

7                                   <u>**CONCLUSION**</u>

8         Defendants Bayshore Global Management LLC, SeaFly LLC, Sergey Brin, and Theodore

9    Neal respectfully request that the Court deny Plaintiff's Motion to Remand.

10

11   Dated: May 16, 2024                          CONDON & FORSYTH LLP

12

13                                               By: /s/ Mary Dow
                                                     SCOTT D. CUNNINGHAM
14                                                   IVY L. NOWINSKI
                                                     CHRISTOPHER R. CHRISTENSEN
15                                                   MARY DOW

16                                                   Attorneys for Defendants
                                                     BAYSHORE GLOBAL MANAGEMENT
17                                                   LLC, SEAFLY LLC, SERGEY BRIN, and
                                                     THEODORE NEAL

18

19

20

21

22

23

24

25

26

27

28

Condon & Forsyth LLP
1901 Avenue of the Stars, Suite 1050
Los Angeles, California 90067-6036
Telephone: (310) 557-2030

## CERTIFICATE OF SERVICE

I, the undersigned, hereby certify that on May 16, 2024, a copy of the foregoing **DEFENDANTS BAYSHORE GLOBAL MANAGEMENT LLC, SEAFLY LLC, SERGEY BRIN, AND THEODORE NEAL'S OPPOSITION TO PLAINTIFF'S MOTION TO REMAND** was electronically filed the with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following counsel of record for the parties who have appeared:

Walter J. Lack (wlack@elllaw.com)
Elizabeth L. Crooke (bcrooke@elllaw.com)
Steven J. Lipscomb (slipscomb@elllaw.com)
ENGSTROM, LIPSCOMB & LACK
11601 Wilshire Boulevard, 14th Floor
Los Angeles, California 90025-1744

Steven C. Marks (smarks@podhurst.com)
Kristina M. Infante (kinfante@podhurst.com)
Pablo Rojas (projas@podhurst.com)
PODHURST ORSECK, P.A.
Suntrust International Center
One S.E. 3rd Avenue, Suite 2300
Miami, Florida 33131

*Attorneys for Plaintiff*

I declare under penalty of perjury that the foregoing is true and correct, and that this Certificate of Service was executed on May 16, 2024, at New York, New York.

/s/ Christopher R. Christensen
Christopher R. Christensen