ELIZABETH L. CROOKE, ESQ. (SBN 90305)
STEVEN J. LIPSCOMB, ESQ. (SBN 203266)
**ENGSTROM, LIPSCOMB & LACK**
11601 Wilshire Boulevard, 14th Floor
Los Angeles, California 90025-1744
Telephone:    (310) 552-3800
Facsimile:    (310) 552-9434
Email:    bcrooke@elllaw.com;
         slipscomb@elllaw.com

STEVEN C. MARKS, ESQ. *(PHV)*
KRISTINA M. INFANTE, ESQ. *(PHV)*
PABLO ROJAS, ESQ. *(PHV)*
**PODHURST ORSECK, P.A.**
Suntrust International Center
One S.E. 3rd Avenue, Suite 2300
Miami, Florida 33131
Telephone:    (305) 358-2800
Facsimile:    (305) 358-2382
Email:    smarks@podhurst.com;
         kinfante@podhurst.com;
         projas@podhurst.com

Attorneys for Plaintiff

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARIA MAGDALENA OLARTE, individually and as personal representative of the Estate of LANCE MACLEAN, deceased,<br><br>Plaintiff,<br><br>vs.<br><br>THEODORE M. NEALE, a California resident and citizen, SERGEY BRIN, a California citizen, BAYSHORE GLOBAL MANAGEMENT LLC, a California limited liability company, GOOGLE LLC, a California limited liability company, SEAFLY LLC, a California limited liability company, SOUTHERN CROSS AVIATION INC., and DOES 1 to 50, inclusive,<br><br>Defendants. | Case No.: 5:24-cv-02021<br>[Assigned to Hon. Araceli Martinez-Olguin, Courtroom 10]<br><br>**PLAINTIFFS' REPLY TO DEFENDANTS' OPPOSITION TO MOTION TO REMAND**<br><br>Date:         August 1, 2024<br>Time: 2:00 pm.<br>Dept.: Courtroom 10 – 19th Floor<br><br>Complaint Filed:    DATE<br>Removed:           DATE<br>Trial Date:        None Set |

# **TABLE OF CONTENTS**

I. DEFENDANTS DO NOT DEMONSTRATE THAT PLAINTIFF'S RIGHT TO RELIEF DEPENDS ON FEDERAL LAW ................................................................... 5

    A. Neither the Wreck Act Nor the National Marine Sanctuary Act Create Private Cause of Action ................................................................................. 5

    B. In The Absence of a Private Right of Action, Defendants Must Show a "Serious Federal Interest" in Claiming the Advantages Inherent in the Federal Forum ................................................................................................ 7

    C. When Confronting Plaintiff's Alternative Argument That the Court Should Not Exercise Supplemental Jurisdiction Over State Law Claims That Arise Out of Defendants' Pre-Accident Negligence, Defendants Do not Even Argue That There is a "Common Nucleus of Operative Fact" ............................. 11

II. CONCLUSION ................................................................................................ 13

# TABLE OF AUTHORITIES

**Cases:**

*Bahrampour v. Lampert*, 356 F.3d 969 (9th Cir. 2004)..................................................................11

*Bd. of Commissioners of Se. Louisiana Flood Prot. Auth.-E. v. Tennessee Gas Pipeline Co., L.L.C.*, 850 F.3d 714 (5th Cir. 2017) ........................................................11

*California v. Sierra Club*, 451 U.S. 287 (1981) .................................................................6

*Carne v. Stanislaus Cnty. Animal Services Agency*, 445 F.Supp.3d 772 (E.D. Cal. 2020) ........................................................................................................................12

*Centola v. Potter,* 183 F.Supp.2d 403 (D. Mass. 2002).....................................................6

*City of Oakland v. BP PLC*, 969 F.3d 895 (9th Cir. 2020)...............................................10

*County of San Mateo v. Chevron Corp.*, 32 F.4th 733 (9th Cir. 2022)............................10

*Empire HealthChoice Assurance, Inc. v. McVeigh*, 547 U.S. 677 (2006).................7, 10

*Grable & Sons Metal Products, Inc. v. Darue Engineering & Mfg.*, 545 U.S. 308 (2005)...........................................................................................................6, 7, 8, 10

*Gunn v. Minton,* 568 U.S. 251 (2013)................................................................................7

*Ilczyszyn v. Sw. Airlines Co.*, 2015 WL 5157372, at *1 (N.D. Cal. Sept. 1, 2015) ...................10

*In re S. Scrap Material Co., LLC,* 541 F.3d 584 (5th Cir. 2008)........................................6

*Jiangong Lei v. City of Lynden,* 2014 WL 6611382, *4, (W.D. Wash. Nov. 20, 2014) ........................................................................................................................11

*Leite v. Crane Co.*, 749 F.3d 1117 (2014) .........................................................................8

*Martinez v. Del Taco, Inc.*, 252 F.App'x 148 (9th Cir. 2007) .........................................10

*Merrell Dow Pharmaceuticals Inc. v. Thompson*, 478 U.S. 804 (1986) ......................5, 6

*Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Manning,* 578 U.S. 374 (2016)..........11

*Michigan Dep't of Env't, Great Lakes, & Energy v. Mueller* 2020 WL 12698601, at *2 (W.D. Mich. June 15, 2020).................................................................10

*Middlesex County Sewerage Auth. v. Nat'l Sea Clammers Assoc.*, 453 U.S. 1 (1981)......................................................................................................................7

*Mitchell v. Advanced HCS, LLC*, 28 F.4th 580 (5th Cir. 2022)......................................11

*Murfey v. Spiders Aircraft Serv., Inc.*, 2006 WL 8455427, at *1–3 (S.D. Cal. May 5, 2006) ..........................................................................................................8

*Shulthis v. McDougal*, 225 U.S. 561 (1912)...................................................................10

*United Mine Workers of America v. Gibbs*, 383 U.S. 715 (1966) ................................11

*United States v. Jenkins* 734 F.2d 1322 n. 3) (9th Cir. 1983).........................................8

*Victoria v. Metro. Life Ins.,* 2010 WL 583946, at *1 (N.D. Cal. Feb. 16, 2010).........10

*W. Towboat Co. v. Vigor Marine, LLC,* 544 F.Supp.3d 1100 (W.D. Wash. 2021).......7

*Wander v. Kaus*, 304 F.3d 856 (9th Cir. 2002)..............................................................10

# TABLE OF AUTHORITIES

**Statutes:**

16 *U.S.C.* §1431 ................................................................................................................ 6

16 *U.S.C.* §1432 ................................................................................................................ 6

16 *U.S.C.* §1437 ................................................................................................................ 6

28 *U.S.C.* §1331 ................................................................................................................ 8

33 *U.S.C.* §409 .................................................................................................................. 6

33 *U.S.C.* §411 .................................................................................................................. 6

33 *U.S.C.* §412 .................................................................................................................. 6

33 *U.S.C.* §414 .................................................................................................................. 6

33 *U.S.C.* §415 .................................................................................................................. 6

**Other Authorities:**

Executive Order No. 13158, May 26, 2020, 65 F.R. 34909 ...................................... 6, 9

**Treatises:**

*Civil Procedure Before Trial* (Rutter Group) at 2:108 .................................................. 10

**Regulations:**

Fed. Reg. Vol 73, No. 225 at 70490 ................................................................................ 9

Defendants argue that Plaintiff must have alleged a "federal question" because the wrecked airplane drifted through the Greater Farallones Marine Sanctuary, off the coast of San Francisco, and Plaintiff has demanded that her husband's remains, still on board, be returned to her. According to Defendants, state law questions are thus "embedded" in a federal question by the happenstance of the drifting wreckage. Defendants are mistaken for on all points, as we explain.

## I. DEFENDANTS DO NOT DEMONSTRATE THAT PLAINTIFF'S RIGHT TO RELIEF DEPENDS ON FEDERAL LAW

Defendants contend that a single sentence in the First Amended Complaint ("FAC"), the reference to duties of a shipwreck's owner, renders the entire action subject to removal, because that sentence embeds federal law (paradoxically, Defendants also insist that those same allegations do not give rise to a viable claim for relief; in which case, this case is unassailably 100% state law.) As the Motion (DKT. 29) explained, Defendants misconstrue the allegations of the FAC and misapply the law. A reference to a federal law standard of care as part of a state law cause of action does not tether a case to a federal question, because the claim does not arise under federal law within the meaning of the Constitution. Plaintiffs do not attempt to enforce a private federal cause of action and did not embed a substantial and disputed question of federal law in this case.

### A. Neither the Wreck Act Nor the National Marine Sanctuary Act Create Private Cause of Action

In *Merrell Dow Pharmaceuticals Inc. v. Thompson*, 478 U.S. 804 (1986), the Court examined the term "arising under" as used in Art. III of the Constitution. Plaintiffs there alleged that Bendectin was "misbranded" as that term is used in the Federal Food, Drug and Cosmetic Act ("FDCA") and alleged that violations of the act created a presumption of negligence in state law tort claims. The Court first noted that the FDCA does not provide a private right of action, so it would "flout, or at least undermine, congressional intent" for a federal Court to nevertheless exercise federal question jurisdiction where there is no private cause of action in the enactment. The Court rejected contentions that: (1) a federal question is an essential element of the state law claim; (2) federal review ensures uniformity; and (3) the novelty of the case warranted federal question jurisdiction (*Id.* pp. 813-816). "[T]he presence of the federal issue as an element of the state tort is not the kind of adjudication for which jurisdiction would serve congressional purposes

and the federal system" (*Id.* 814). Thus, "a complaint alleging a violation of a federal statute as an element of a state cause of action, when Congress has determined that there should be no private, federal cause of action for the violation, does not state a claim 'arising under the Constitution, laws, or treaties of the United States'" (*Id.* 817, quoting 28 *U.S.C.* §1331). The Court emphasized that restraint should be exercised when assessing federal question jurisdiction (*Id.* 810).

Defendants cannot and do not contend that the Wreck Act or the Rivers and Harbors Act ("RHA")[1] (of which the Wreck Act is part) provide a private cause of action. In *California v. Sierra Club*, 451 U.S. 287, 297 (1981), the Court analyzed environmental claims made under the Section 10 of the RHA and held that the Act does not create a private cause of action. Since those Acts afford no private remedy, the exercise of federal-question jurisdiction here would thus undermine congressional intent, absent a compelling and "serious federal interest" (*Grable & Sons Metal Products, Inc. v. Darue Engineering & Mfg.*, 545 U.S. 308, 314 (2005) ("*Grable*")).

Defendants next point to the National Marine Sanctuaries Act ("NMSA") 16 *U.S.C.* §1431 *et seq.* as a basis for federal question jurisdiction. Nowhere in that Act is there even a hint that private enforcement is contemplated; to the contrary, NMSA contemplates "enforcement actions [to be] undertaken by the Secretary [of Commerce]" (16 *U.S.C.* §1432(6), (7), and *see*, 16 *U.S.C.* §1437 ("The Secretary shall conduct such enforcement activities…")). President Clinton's May 26, 2000 Executive Order No. 13158, 65 F.R. 34909, expanded the system of protected areas while ensuring that the states were active participants in the endeavor.

Nowhere in the enactment or Executive Order is there reference to private enforcement. Defendants do not point to any such language anywhere in NMSA or in the decisional law. Just as is the case with the RHA, in the absence of any private cause of action, exercise of federal question jurisdiction undermines congressional (and executive) intent[2] (*see, e.g.*, *W. Towboat Co. v. Vigor*

---

[1] Contrary to Defendants' recitation at Dkt 31, p 1, Sections 15, 16, 19 and 20 of the Rivers and Harbors Act of 1899 (33 *U.S.C.* §§ 409, 411, 412, 414 and 415) are collectively known as the Wreck Act (*see*, *In re S. Scrap Material Co., LLC,* 541 F.3d 584, 585, n. 1(5th Cir. 2008)).

[2] *Centola v. Potter,* 183 F.Supp.2d 403, 413 (D. Mass. 2002) (private cause of action on executive order requires showing that: (1) President issued the order pursuant to a statutory mandate or delegation of authority from Congress, with the force and effect of law; and (2) that the order's terms and purpose evidenced an intent to create a private right of action – both are absent here).

*Marine, LLC,* 544 F.Supp.3d 1100, 1113 (W.D. Wash. 2021), aff'd., 85 F.4th 919 (9th Cir. 2023), (United States is proper claimant for sinking of dock; private indemnity claim under NMSA when NOAA is not a party is not ripe); *see*, *too*, *Middlesex County Sewerage Auth. v. Nat'l Sea Clammers Assoc.*, 453 U.S. 1, 14 (1981) ("[i]n view of these elaborate enforcement provisions [of the CWA] it cannot be assumed that Congress intended to authorize by implication additional judicial remedies for private citizens suing under [the CWA]")). The NMSA would not support a private claim so the exercise of federal jurisdiction could undermine congressional intent.

**B.     In The Absence of a Private Right of Action, Defendants Must Show a "Serious Federal Interest" in Claiming the Advantages Inherent in the Federal Forum**

Where a statutory framework provides no private cause of action, only a "special and small category" of cases can still be said to arise under the Constitution, laws or treaties of the United States. The test for federal jurisdiction over a state law claim is whether the federal issue is "(1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal Court without disrupting the federal-state balance approved by Congress" (*Gunn v. Minton,* 568 U.S. 251, 258 (2013), quoting *Grable*, *supra*, 545 U.S. at 314). Only where all four requirements are met is jurisdiction proper because only then is there a serious federal interest at stake "which can be vindicated without disrupting Congress's intended division of labor between state and federal Courts" (*Id.* 258). For *Grable* purposes, a substantial federal question would be at issue if resolution of the federal question would both be: (1) dispositive of the case and (2) controlling in numerous other cases (*see*, *Empire HealthChoice Assurance, Inc. v. McVeigh*, 547 U.S. 677, 700 (2006)).

In *Gunn*, a legal malpractice claim in a patent infringement matter did not arise under federal law because, despite the need to apply federal patent law (the "case within a case") and despite the federal issue being "actually disputed," the federal issue was not "substantial"- that is it was not important "to the federal system as a whole" (*Id.* 261). No matter how a state Court handles the malpractice case, federal patent litigation will be unchanged. Finally, nothing about the malpractice case would undermine uniformity of patent law. State Courts can be trusted to follow federal precedent.

**PLAINTIFFS' REPLY TO DEFENDANTS' OPPOSITION TO MOTION TO REMAND**

Defendants here cannot satisfy the four *Grable* requirements. The federal issue is not "necessarily raised" – either by the Wreck Act or NMSA because neither Act delineates Defendants' duties to Mrs. MacLean – those duties all arise under state law. As Defendants concede, the FAC alleges only state law claims. But Defendants persist in their argument that the crash occurred in an area of "exclusive control of the federal government" (Opp. DKT. 31, p. 5). According to Defendants, that "exclusive control" translates to federal question. But, even if the federal government had "exclusive control" offshore (and it is not true for the Farallones, which are part of the City of San Francisco[3]) the conclusion Defendants draw would turn maritime law on its head. By Defendants' logic, most maritime claims are federal question claims because they occur in federal territorial waters. But the law is well settled that a claim based on admiralty law does not arise under the laws of the United States within the meaning of §1331 jurisdiction (*Romero v. International Terminal Operating Co.* (1959) 358 U.S. 354; *Matter of Oswego Barge Corp.* (2d Cir. 1981) 664 F.2d 327, 338), and this is true whether the claim arose in federal or state or even international waters. The maritime location makes no difference in the federal question analysis.

Defendants go a step further, characterizing the Greater Farallones Marine Sanctuary as a pure creature of federal law that somehow also necessitates federal question jurisdiction[4]. But Defendants cannot and do not go so far as to contend that the Farallones are a federal enclave because there has been no "Cession of particular States" under Article 1, section 8, clause 17 of the United States Constitution (*see*, *United States v. Jenkins* 734 F.2d 1322, 1325 n. 3) (9th Cir. 1983). After the state consents, the United States must formally accept exclusive federal jurisdiction (*Id.*, 1325 n. 3). While "enclave jurisdiction" applies to military bases, federal Courthouses and other federally acquired properties, a marine sanctuary is not so "owned." In *Murfey v. Spiders Aircraft Serv., Inc.*, 2006 WL 8455427, at *1–3 (S.D. Cal. May 5, 2006) a removing defendant unsuccessfully made similar allegations following an airplane crash in Boise National Forest.

---

[3] California Dept. of Fish & Wildlife, https://cdfwmarine.wordpress.com/2016/04/04/exploring-californias-marine-protected-areas-the-farallon-islands/, last visited May 20, 2024.

[4] Plaintiff objects to Defendants' introduction of evidence in its opposition; the Motion to Remand made a facial challenge to removal, not a factual one inviting counter-evidence. Defendants' reliance on *Leite v. Crane Co.*, 749 F.3d 1117 (2014) is thus misplaced.

1   Defendant did not show that the property had been ceded to the United States as an enclave and did
2   could not show that in establishing the National Forest, the federal government reserved
3   jurisdiction to itself; it did not do so there, and it did not do so here, either.
4         The Islands are part of a nature sanctuary jointly protected by the State of California
5   Department of Fish & Wildlife and the U.S. Dept. of Commerce, where the site is co-administered
6   by NOAA. In designating the Farallons as a marine sanctuary Congress specifically left intact
7   California's Fish & Game Code and Fishery Management Plans, among other things, Fed. Reg.
8   Vol 73, No. 225 at 70490, for instance. The Sanctuary protects sea life through a cooperative effort
9   between California and its federal partners at NOAA. The enacting legislation, 16 USC §1431, for
10  instance identifies as a "purpose and policy" "(b)(7) to develop and implement coordinated plans
11  for the protection and management of these areas with appropriate Federal agencies, State and
12  local governments…" – not the "exclusive" federal governance Defendants contend is in place.
13  Executive Order No. 13158, May 26, 2020, 65 F.R. 34909, goes to great lengths to describe a
14  concurrent system, defining "Marine protected area" as "any area of the marine environment that
15  has been reserved by Federal, State, territorial, tribal, or local laws..." and goes on to describe the
16  expected coordination between federal and state agencies. That Executive Order concludes: "(a)
17  Nothing in this order shall be construed as altering existing authorities regarding the establishment
18  of Federal MPAs in areas of the marine environment subject to the jurisdiction and control of
19  States…" State agencies and resources are expressly to be part of the enforcement mechanisms:
20  "(h) Use of resources of State and other Federal agencies: The Secretary shall, whenever
21  appropriate, use by agreement the personnel, services, and facilities of State and other Federal
22  departments, agencies, and instrumentalities, on a reimbursable or non-reimbursable basis, to carry
23  out the Secretary's responsibilities under this section" (*Id.*).
24        It naturally follows that because responsibility for the Sanctuary was shared, there is no
25  exclusive federal jurisdiction. No question to be decided in this case implicates a purely federal or
26  congressional concern; to the contrary, California is more profoundly affected by the inevitable
27  coastal damage than is the federal government. It is telling that Defendants can point to no term or
28  provision of the NMSA or RHA that is essential to the wrongful death and conversion claims; only

that Defendants might disturb the seabed if they *did* actually recover the wreckage. This doesn't implicate a substantial interest under federal law likely to disrupt the federal-state balance approved by Congress within the meaning of *Grable*, any more than do the extensive environmental litigation discussed in *County of San Mateo v. Chevron Corp.*, 32 F.4th 733 (9th Cir. 2022) and *City of Oakland v. BP PLC*, 969 F.3d 895 (9th Cir. 2020). Federal law is not an essential element of the nuisance claims in those cases, and it is not an essential element of what Defendants correctly describe as a state law wrongful death claim. Mr. MacLean didn't die because of a violation of the NMSA or RHA; even if federal law were an essential element of a state law claim (which it is not), the claim is not removeable (*Wander v. Kaus*, 304 F.3d 856 (9th Cir. 2002) (violation of ADA as element of state claim does not confer federal-question jurisdiction); *Martinez v. Del Taco, Inc.,* 252 F.App'x 148, 149 (9th Cir. 2007) (same); *Ilczyszyn v. Sw. Airlines Co.*, 2015 WL 5157372, at *1 (N.D. Cal. Sept. 1, 2015) (wrongful death claim implicating TSA regulations does not create federal-question jurisdiction).

Even if the state Court is required to interpret federal law, that is not enough to raise a substantial federal issue (*Victoria v. Metro. Life Ins.,* 2010 WL 583946, at *1 (N.D. Cal. Feb. 16, 2010) (citing *Civil Procedure Before Trial* (Rutter Group) at 2:108). This is so because a federal issue within the meaning of *Grable* is one that involves a dispute regarding "the validity, construction or effect of federal law" (*Grable*, 545 U.S. at 313 (quoting *Shulthis v. McDougal*, 225 U.S. 561, 569 (1912)) (internal brackets omitted)). Here, no federal issue would be dispositive of the case or controlling on other cases (*Empire HealthChoice Assurance, Inc. v. McVeigh*, *supra*, 547 U.S. at 700).

Defendants identify no such substantial federal issue and point to no law for the proposition that the Wreck Act or the RHA create one. *Michigan Dep't of Env't, Great Lakes, & Energy v. Mueller* 2020 WL 12698601, at *2 (W.D. Mich. June 15, 2020), cited by defendants, does not so hold; there, defendant was licensed by and regulated by the Federal Energy Regulatory Committee, and when defendant's dam collapsed, catastrophic damage followed. The Federal Power Act preempts state law, occupying the whole field. This case thus falls within that narrow exception to the well-pleaded complaint doctrine where a federal statute's force is so great the it preempts state

law. The Federal Power Act, not the RHA, was the statute that held that force.

Other cases cited by Defendants do not assist them. In *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Manning,* 578 U.S. 374 (2016), an investor sued the brokers for market misconduct and the Court held that the Securities Exchange Act of 1934 expressly granted federal courts exclusive jurisdiction of suits to enforce duties under the Act. No such grant appears in the RHA or NMSA. *Mitchell v. Advanced HCS, LLC*, 28 F.4th 580 (5th Cir. 2022) held that federal law, the Covid-19 PREP Act, did *not* preempt state law claims against nursing home and the case was remanded. In *Bd. of Commissioners of Se. Louisiana Flood Prot. Auth.-E. v. Tennessee Gas Pipeline Co., L.L.C.*, 850 F.3d 714, 722 (5th Cir. 2017), the federal levee system was exclusively a creature of federal law with no state court counterpart for the asserted claims so federal jurisdiction was appropriate. These cases do not support Defendants' contentions.

  C. **When Confronting Plaintiff's Alternative Argument That the Court Should Not Exercise Supplemental Jurisdiction Over State Law Claims That Arise Out of Defendants' Pre-Accident Negligence, Defendants Do not Even Argue That There is a "Common Nucleus of Operative Fact"**

Defendants ignore completely Supreme Court precedent requiring that state law claims "derive from a common nucleus of operative fact" to warrant the exercise of supplemental jurisdiction (*United Mine Workers of America v. Gibbs*, 383 U.S. 715, 725 (1966)("The state and federal claims must derive from a common nucleus of operative fact."); *see also*, *Bahrampour v. Lampert*, 356 F.3d 969, 978 (9th Cir. 2004) ("A state law claim is part of the same case or controversy when it shares a 'common nucleus of operative fact' with the federal claims and the state and federal claims would normally be tried together."). Defendants do not even mention this legal requirement for the exercise of supplemental jurisdiction, much less attempt to meet it.

The causes of action arising out of the pre-accident conduct that led to Mr. Mclean's death do not derive from a common nucleus of operative fact with the causes of action arising out of Defendants' post-accident failure to recover Mr. Mclean's body. Courts have held that "there is no common nucleus of operative fact if there is no evidentiary overlap whatsoever between the claims" (*Jiangong Lei v. City of Lynden,* 2014 WL 6611382, *4, (W.D. Wash. Nov. 20, 2014)). The evidence with respect to the pre-accident failures that led to Mr. McLean's death is entirely

distinct from the evidence relating to Defendant's failure to recover his body.

Instructive on this topic is *Carne v. Stanislaus Cnty. Animal Services Agency*, 445 F.Supp.3d 772, 775 (E.D. Cal. 2020). There:

> [t]he conduct that gives rise to the state law claims is the Stanislaus Shelter's alleged mistreatment of animals. The conduct that gives rise to the federal claims is the Stanislaus Shelter's attempts to stop Plaintiffs when they tried to document and publicize that alleged mistreatment." (*Id*.)

In other words, these are two causes of action against the same defendant: one arising from the mistreatment of animals and one arising from post-animal-mistreatment conduct. The Court found it did not have subject matter jurisdiction over the state law claims, explaining that although "[t]here is some causal link between these two clumps of actions" because "Plaintiffs sought to videotape inside the Stanislaus Shelter because of the alleged mistreatment," "[t]he evidence that pertains to the state law claims focuses on the Stanislaus Shelter's treatment of animals[,]… [while] [t]he evidence related to the federal claim focuses on the attempt to film inside the Stanislaus Shelter, calls to the police about harassment, and a threat to cut off access to an email list" (*Id*.). Accordingly, the Court found "[t]here is minimal overlap of evidence between the two" (*Id*.).

Importantly, the *Carne* Court emphasized that the defendants' actions that underlie each of the claims were different, and thus "there is no common nucleus" despite some evidentiary overlap (*see*, *Id*.). So too here. Defendants only weakly gesture at evidentiary overlap between the pre-accident and post-accident causes of action. They say the three causes of action are all "predicated on the location of the decedent's remains[.]" (DKT. 31 at 20). But Plaintiffs' causes of action for wrongful death are not "predicated" on the location of remains; they are predicated on the Defendants' actions that caused Mr. Mclean's death. Defendants in *Carne* tried a similar tactic, arguing that the claims were all predicated on the mistreated animals. There, the Court correctly found that this was not enough. The correct analysis focuses on "the actions that underlie" the claims (*Carne*, 445 F.Supp.3d 775). Here, as in *Carne*, the actions underlying the pre-accident and post-accident claims are factually and temporally distinct. If the Court chooses to exercise jurisdiction over post-accident claims, it should sever and remand claims arising from Defendant's

pre-accident conduct.

## II. CONCLUSION

These cases raise state law claims that belong in state court where they were originally brought. Plaintiff respectfully requests that the matter be remanded to the Superior Court.

Dated: May 23, 2024                ENGSTROM, LIPSCOMB & LACK

                                   By:    */s/ Elizabeth L. Crooke*
                                          ELIZABETH L. CROOKE, ESQ.
                                          STEVEN J. LIPSCOMB, ESQ.
                                          Attorneys for Plaintiff

Dated: May 23, 2024                PODHURST ORSECK, P.A.

                                   By:    */s/ Kristina M. Infante*
                                          STEVEN C. MARKS, ESQ.
                                          KRISTINA M. INFANTE, ESQ.
                                          PABLO ROJAS, ESQ.
                                          Attorneys for Plaintiff

# CERTIFICATE OF WORD COUNT

I certify that the accompanying **PLAINTIFFS' REPLY TO DEFENDANTS' OPPOSITION TO MOTION TO REMAND**, which was prepared using Times New Roman 12-point typeface, contains 3,556 words, excluding the title page, signature lines, this Certificate, and Certificate of Service. This certificate was prepared in reliance on the word count function of the word-processing system (Microsoft Word) used to prepare the document.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: May 23, 2024                         ENGSTROM, LIPSCOMB & LACK

                                                              By:   */s/ Elizabeth L. Crooke*
                                                                      ELIZABETH L. CROOKE, ESQ.
                                                                      STEVEN J. LIPSCOMB, ESQ.
                                                                      Attorneys for Plaintiff

## CERTIFICATE OF SERVICE

I hereby certify that on May 23, 2024, a true and correct copy of **PLAINTIFFS' REPLY TO DEFENDANTS' OPPOSITION TO MOTION TO REMAND** was served electronically to all parties with an email address on record who have consented to electronic service in this action.

*/s/ Erin Stover*
ERIN STOVER